James Willie Cochran was convicted in the Jefferson County Circuit Court of the capital offense of robbery when the *Page 1181 
victim is intentionally killed. Code 1975, § 13A-5-31(a)(2) (Repealed).[1] This appeal is based upon defendant's third trial. His first trial ended in a mistrial, and the conviction in the second trial was reversed on authority of Beck v. State,396 So.2d 645 (Ala. 1980). At the end of the third trial, defendant was sentenced to death under the procedures outlined in Beck, and both his conviction and sentence were affirmed by the Court of Criminal Appeals. Cochran v. State, 500 So.2d 1161
(Ala.Crim.App. 1984).
Only a brief summary of the facts is presented here, so that the facts most pertinent to each issue may be discussed separately. For a more detailed statement of the facts, see the opinion of the Court of Criminal Appeals. A little before 10:00 p.m. on November 4, 1976, a lone black male entered the A P Grocery Store in Homewood, Alabama, and demanded that all the money from the store safe and cash registers be placed in a grocery sack. At the time, an assistant manager and a store clerk, along with several customers, were inside the store. After receiving the money, the robber left the store and was followed by the assistant manager. The men were observed going through a "stop and go" motion, in that the robber would go a short distance, and then stop and point his gun at the assistant manager and then turn and continue on, repeating this every few steps. Following the report of the robbery, the police surrounded the immediate vicinity to search for the robber. At least one gunshot was heard by the officers during their search. Soon thereafter, the police apprehended defendant and, during a full search of him at the police station, they seized a large amount of money wrapped in an A P band. Later that night, the police found the assistant manager dead.
Defendant presents ten issues on appeal.
 I
The first issue is whether this Court's actions in Beck v.State, 396 So.2d 645 (Ala. 1980), violated the Alabama Constitution of 1901 and the United States Constitution. We have previously dealt with this question and have decided that the actions taken in Beck are constitutional. Ex parte Potts,426 So.2d 896, 900 (Ala. 1983).
 II
The second issue is whether defendant's Fifth Amendment right not to be placed in jeopardy twice for the same offense was violated when he was retried following a mistrial in his first trial.
During defendant's first trial, the judge brought to defense counsel's attention the fact that one of the state's witnesses had been undergoing psychological treatment. This witness, and a second witness, had already testified in the trial and had identified defendant as the person who had robbed the store, although neither of them had been able to identify him prior to trial. Defense counsel moved for a mistrial based on the state's failure to notify defendant of the psychological treatment of the witness. The trial judge, stating he was doing so for reasons of necessity, granted defendant's motion.
Defendant argues that the failure of the state to provide him the information on the witness is the type of conduct known as "prosecutorial overreaching," which was condemned in UnitedStates v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267
(1976), and he argues that it precludes a retrial. However, the most recent opinion on this subject, Oregon v. Kennedy,456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), expressly rejects this standard in determining whether a second trial is barred following a defendant's motion for mistrial. In Kennedy, the Court stated: *Page 1182 
 "[T]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial."
456 U.S. at 679, 102 S.Ct. at 2091.
Reviewing the facts in light of this standard, we are unable to characterize the prosecutor's conduct as the kind that would be intended to provoke a defendant into moving for a mistrial. The prosecutor clearly stated his reasons for not informing the defense counsel of the two items complained of, and the trial judge made a detailed explanation for the record as to the reasons why he granted the mistrial. Neither in the in-chambers discussions with counsel nor in his explanation for the record, did the trial court indicate that he found that the prosecutor intended to cause defendant to move for a mistrial, and we find no basis for such a finding either.
Even under the more stringent Alabama law on this subject, defendant's argument is without merit. In Woods v. State,367 So.2d 982, 984 (Ala. 1978), this Court held that if a high degree of necessity for the mistrial could be demonstrated, then a second trial would not be prohibited. In the present case, the trial judge found the requisite "high degree" of necessity for the mistrial in defendant's argument in support of his request for the mistrial. In his explanation for the record, the trial judge indicated that he was granting the mistrial because defendant's counsel wanted additional time to determine how to cross-examine the witness who had undergone the psychological treatment and because two witnesses for the state, who had been unable to identify defendant prior to trial, had done so at trial. Since it is within the trial judge's broad discretion to decide whether the high degree of necessity has been met, we will not interfere with that discretion unless there is a clear abuse. Woods, 367 So.2d at 984. There is no such abuse present in this case, and defendant's subsequent trials were not barred.
 III
The third issue is whether the trial court committed error when it failed to grant defendant's motion to suppress as to the items found in an automobile located near the crime scene.
On the same night that the robbery took place, a Homewood police officer was sent to the parking lot of the A P and other nearby stores to look for cars that were "out of place." At the time of this search of the parking lot, the officer was unaware of the name of the suspect who had been arrested. Although the parking lot covers a relatively large area, there were not many cars there at that time of night. After looking at the cars and running a license plate check on a couple of them, the police officer noticed that one of the cars was unlocked, had the keys in the ignition, and had a billfold lying in the front seat. He opened the car door and looked in the billfold, where he found a Social Security card in defendant's name. He then replaced the card and the billfold and left them as he had found them.
Upon discovering nothing of a suspicious nature, the officer returned to city hall and asked the name of the suspect arrested in the A P robbery. When he learned that the suspect's name matched the name on the card he had found, he informed his superior, who then ordered him to return to the car and have it impounded. The next morning the contents of the car were inventoried at the police impoundment lot, and the items in the car were later produced at trial as evidence against defendant.
Defendant argues that the items found in the car should have been suppressed because the police officer did not have probable cause for the initial entry into the car and because no search warrant was issued for the later inventory. A threshold question is whether defendant has standing to assert a violation of the Fourth Amendment *Page 1183 
for an allegedly illegal search and seizure.[2]
In the decision of Rakas v. Illinois, 439 U.S. 128,99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court stated that only those individuals whose own Fourth Amendment rights may have been violated have standing to challenge the legality of a search and seizure. The burden of showing that his individual Fourth Amendment rights were violated rests on the person who is seeking to suppress the evidence obtained in the search.Rakas, 439 U.S. at 131 n. 1, 99 S.Ct. at 424 n. 1. Absent this showing, the trial court is not in error when it does not suppress the evidence.
The facts produced at the hearing on the motion to suppress and at defendant's trial indicate that defendant did not meet his burden of establishing that his individual rights were violated. At the hearing on the motion to suppress, defendant did not offer any proof that he had a legitimate expectation of privacy in the car; specifically, no attempt was made to show who owned the car, or that defendant had permission to use the car. At defendant's trial, the testimony showed that Ms. Bobbie Burpo owned the car at the time of the robbery, although title to the car remained in the name of another person from whom she had just bought the car. Ms. Burpo was the niece of defendant's wife, and had loaned the car to her aunt while Ms. Burpo was in the hospital. On cross-examination by the defense, Ms. Burpo testified that she did not know who had driven the car while she was in the hospital or how the car had got to the A P parking lot. No other testimony was produced to show that defendant had a legitimate expectation of privacy in the car at the time of the search.
Based on these facts, we find that defendant failed to establish that his own individual rights were violated. Therefore, we need not address whether the search and seizure were valid.
 IV
The fourth issue is whether the trial court erred when it excused juror Elvira Cochran for cause.
During the voir dire examination of jurors, the prospective jurors were asked whether any of them were related to defendant. One juror, Elvira Cochran, raised her hand and said she was not sure if she was or not. Upon further questioning, Mrs. Cochran stated that this was her married name, and that although she did not recognize defendant as a member of the family, it was possible that he could be. Mrs. Cochran was then asked if this possible relationship might influence her decision, and she responded that it might. Then the following took place:
 "The Court: . . . Is there any doubt in your mind that you could not base it [your decision] solely on the law and the evidence because of the name or the possibility that you are related[;] that's what we want to know.
 "Juror Cochran: I believe I would not be able to do that, sir."
Defendant contends that Mrs. Cochran should not have been excused for cause because it was not proven that she and defendant were related within the degree specified in Code 1975, § 12-16-150. However, the grounds for disqualification found in that section are not exclusive and other grounds which indicate any probable prejudice will also lead to a disqualification of a juror. Ex parte Nettles, 435 So.2d 151,153-54 (Ala. 1983). Because the qualification of a juror is a matter within the discretion of the trial judge, on appeal this Court will look to the questions asked and the answers given only to see if the trial court's discretion was properly exercised. Alabama Power Co. v. Henderson, 342 So.2d 323, 327
(Ala. 1976). After reviewing the whole record of the questions asked to, *Page 1184 
and the answers given by, Mrs. Cochran, we find that the trial judge properly exercised his discretion and was not in error for excusing her for cause.
 V
The fifth issue is whether the pretrial identification procedures were unnecessarily suggestive so as to lead to a substantial likelihood of misidentification.
About three days after the A P robbery and murder, the store clerk who had been in the store at the time of the robbery viewed a lineup at the police station. Although defendant was in the lineup, the clerk identified another man as the A P robber. At defendant's preliminary hearing, the clerk was asked whether she could identify the person who had entered the store and later robbed it. At that time, she was also unable to positively identify any person in that respect, although defendant was the lone black male seated at the counsel table. At defendant's first, and second trials, and subsequently at his third trial (the basis of this appeal), the clerk was able to positively identify defendant as the person who had robbed the A P. A second witness for the state who identified defendant at trial had also identified another person at a lineup. Based on this, defendant argues that these identification procedures were unnecessarily suggestive so as to lead to a substantial likelihood of misidentification and that the in-court identifications should have been suppressed.
The issue of whether or not pretrial identification procedures have been unnecessarily suggestive has generally been raised where photographic identifications, showups, or unreasonable lineups have been involved. See e.g., Neil v.Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972);Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967,19 L.Ed.2d 1247 (1968); Foster v. California, 394 U.S. 440,89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). The facts presented to the Court do not indicate that any such unnecessarily suggestive identification procedures occurred in this case. Although the circumstances surrounding the identification of defendant are troublesome, the determination of the credibility of the identification is to be left to the decision of the jury. Allenv. Estelle, 568 F.2d 1108, 1112 n. 6 (5th Cir. 1978); see also,United States v. Blasco, 702 F.2d 1315, 1332 n. 28 (11th Cir. 1983). This is true even where a witness has identified a person other than the defendant in the lineup, since this kind of information would go to the weight to be accorded to, and not the admissibility of, the identification. Agee v. State,424 So.2d 1368, 1370 (Ala.Crim.App. 1982). In this case, the non-identification of defendant at the lineup could have been explained to the jury's satisfaction by the photographs of defendant taken at the time of his arrest and at the time of the lineup. These photographs show that at the time of his arrest, defendant had a bushy hairstyle, a mustache, and a small amount of hair on his chin, whereas at the time of the lineup, none of these features was present. The jury could have reasonably concluded that this change in appearance caused the witnesses' inability to identify defendant. Therefore, the trial judge did not err when he did not suppress the in-court identifications.
 VI
The sixth issue is whether the trial court committed error by failing to furnish transcripts of defendant's first trial and other proceedings without cost to defendant.
Defendant requested that he be given transcripts of his first trial and of the other prior proceedings so that he could effectively cross-examine and impeach the state's witnesses at the subsequent trial. The trial court denied the request for a complete transcript on the basis that defense counsel had had the opportunity to hear the earlier testimony of the state's witnesses and had taken a large number of notes during their testimony. Although defendant had several attorneys representing him throughout his litigation, the record on appeal reflects that one of those attorneys represented him from the preliminary *Page 1185 
hearing through the third trial. It also appears from the record that defense counsel had at least some transcription of the testimony of several witnesses, since he referred the witnesses to their previous testimony on several occasions during cross-examination.
Based on our decision in Ex parte Lindsey, 456 So.2d 393
(Ala. 1984), we believe the trial court did not commit an error in failing to grant defendant's request. There we said:
 "We also affirm . . . the Court of Criminal Appeals' holding that the denial of Lindsey's motion for a free transcript of the first trial does not require a reversal under the facts of this case. While it would have been proper for the trial court to grant the motion under the rule announced in Britt v. North Carolina, 404 U.S. 226
[92 S.Ct. 431, 30 L.Ed.2d 400] (1971), the facts in this case, just as in Britt, indicate that an adequate substitute was available. Lindsey's counsel conducted pointed cross-examination of the State's key witnesses, making frequent reference to their prior testimony."
456 So.2d at 394.
Therefore, the decision of the trial court not to grant defendant's request was not error.
 VII
The seventh issue is whether the trial court committed error when it failed to grant defendant's motion for a directed verdict based on his contention that the "intentional killing" occurred after the "robbery" was complete.
At the close of the state's evidence, defendant moved for a directed verdict. The basis for his motion was that the testimony of the state's witnesses indicated that the intentional killing he was charged with committing occurred some time after the robbery was complete, and that therefore he could not be guilty of the capital offense charged. The defendant was charged with "Robbery or attempts thereof when the victim is intentionally killed by the defendant," Code 1975, § 13-11-2(a)(2) (Repealed). This crime has been defined by this Court in Ex parte Baldwin, 456 So.2d 129, 133
(Ala. 1984). There we said:
 "The crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating with the act of intentionally killing the victim. The offense consists of two elements, robbing and intentionally killing, but does not consist of two separate offenses."
(Quoting Baldwin v. State, 372 So.2d 32, 33 (Ala. 1979).)
The facts presented at defendant's trial indicated that after the robber received the store money, he left the store and was followed outside by the assistant manager. The assistant manager was then observed following the robber until the two men were out of the witness's sight. Within a period of twenty minutes, a gunshot was heard in the area in which the police were searching for the robber. In less than an hour after the robbery, the police had arrested defendant and had found the body of the assistant manager. Based on these facts, we are of the opinion that the "beginning" act of robbery was sufficiently close in proximity to the "culminating" act of the intentional killing to establish the elements of the capital offense defendant was charged with. Therefore, the motion for directed verdict was properly denied.
Finally, we add one further point with respect to defendant's conviction. We initially note that the evidence presented in this case is not unlike that produced in Ex parte Jones,450 So.2d 171 (Ala. 1984), where we affirmed both the defendant's conviction and his sentence of death. With respect to the evidence presented here, we have reviewed the record and we find that there was sufficient evidence from which the jury could exclude every reasonable hypothesis except that of defendant's guilt. Cumbo v. State, 368 So.2d 871, 874
(Ala.Crim.App. 1978). *Page 1186 
The final three issues raised by defendant are concerned with the sentencing phase of his trial.
 VIII
The eighth issue is whether the trial judge incorrectly instructed the jurors that the defendant had the burden of establishing the mitigating circumstances that were in his favor.
The death penalty statute under which defendant was convicted, Code 1975, § 13A-5-31, et seq. (Repealed), did not provide who had the burden of establishing the mitigating circumstances. Although this Court has not specifically decided this issue, several Justices in concurring opinions have addressed it. See, Cook v. State, 869 So.2d 1251, 1258
(Ala. 1978) (Bloodworth, J., concurring specially); Jacobs v.State, 361 So.2d 640, 647 (Ala. 1978) (Torbert, C.J., concurring in part; dissenting in part). We believe that what was said by Justice Maddox in his special concurrence in Cook v. State, 369 So.2d at 1260, is the best explanation of the law as it was at the time of defendant's conviction: "I disagree with any suggestion that the burden is on the state or the judge to proffer mitigating evidence — the only obligation on the state is, as Lockett [v. Ohio, 438 U.S. 586, 98 S.Ct. 2954,57 L.Ed.2d 973 (1978),] holds, to permit the defendant to present mitigating evidence." In the present case, the trial judge's instructions to the jury merely stated that defendant was the one required to present evidence of mitigating circumstances. We find no error in this instruction.
 IX
The ninth issue is whether the trial court erred by not giving instructions to the jury on the specific mitigating factors offered by defendant.
During the sentencing hearing, defendant offered the testimony of a former employer to establish mitigating circumstances in his favor. Also in closing argument, his defense counsel argued that the circumstances of the crime itself should be considered as mitigating circumstances in defendant's favor. In the instructions to the jury, the trial judge instructed the jurors on their duty regarding mitigating circumstances, listing the statutory mitigating circumstances and telling them that they could find any other mitigating circumstance, but he did not instruct them as to the specific circumstances offered by defendant. Defendant claims this was error.
In Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964,57 L.Ed.2d 973 (1978), the Supreme Court said that the sentencer in a death penalty case could not be precluded from considering any mitigating circumstance. The Court did not require that instructions be given to the sentencer on the specific mitigating circumstances offered by a defendant. In another recent case in which the Supreme Court was discussing the Georgia death penalty statute that was upheld in Gregg v.Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the Court stated:
 "By its requirement that the jury find one of the aggravating circumstances listed in the death penalty statute, and by its direction to the jury to consider 'any mitigating circumstances,' the Georgia statute properly confined and directed the jury's attention to the circumstances of the particular crime and to 'the characteristics of the person who committed the crime. . . . ' "
Eddings v. Oklahoma, 455 U.S. 104, 111, 102 S.Ct. 869, 875,71 L.Ed.2d 1 (1982).
The language in Lockett and Eddings indicates that so long as the sentencer is not precluded from considering any mitigating factor, the requirements of the Constitution have been satisfied. See, Tucker v. Zant, 724 F.2d 882, 892 (11th Cir. 1984). Therefore, the trial court did not commit error by not instructing the jury on the specific mitigating factors defendant claimed were present.
 X
The tenth issue is whether the trial judge erred when he found that there were no mitigating circumstances.
With respect to the sentencing of defendant, the final order of the trial judge stated the following: *Page 1187 
 "This Court further finds that there are no mitigating circumstances shown. Therefore, the aggravating circumstances as required by law totally outweigh the mitigating circumstances, there being none shown.
 "After considering all matters properly before the Court as herein stated and presented during this hearing, this Court is convinced beyond a reasonable doubt and to a moral certainty that the aggravating circumstance is sufficient to uphold the jury's fixing the punishment of death and this Court so finds as a matter of fact.
 "It is the judgment of this Court that this defendant should be sentenced to death."
Based on the reasons set forth below, we are required to remand this case for a new sentencing hearing so that the trial judge may enter specific written findings of fact on the mitigating circumstances offered by defendant.
In Clisby v. State, 456 So.2d 99 (Ala.Crim.App. 1983), aff'd, 456 So.2d 105 (Ala. 1984), the Court of Criminal Appeals dealt with a similar situation. There, the defendant offered the testimony of a psychiatrist at his sentencing hearing to show that he had had a mental deficiency at the time of the crime. This testimony was introduced for the purpose of showing a mitigating circumstance. The trial judge, in his final order, found no mitigating circumstances and sentenced the defendant to death. The Court of Criminal Appeals remanded the case for a new sentencing hearing, stating: "His finding 'that there are no mitigating circumstances' requires that this cause be remanded in light of Eddings v. Oklahoma, [supra]." 456 So.2d at 100.
The Court of Criminal Appeals remanded Clisby based on the admonition of the U.S. Supreme Court in Eddings that "the sentencer [may not] refuse to consider, as a matter of law, any relevant mitigating evidence." 455 U.S. at 114,102 S.Ct. at 877 (emphasis in original). Based upon the written findings of the trial judge, the Court of Criminal Appeals could not determine whether the trial judge "considered the defendant's mental deficiency as a mitigating circumstance and then
determined that the degree of mental deficiency was simply insufficient . . . or whether he merely decided that the defendant's mental deficiency could not be considered as a mitigating circumstance as a matter of law. . . ." 456 So.2d at 102 (emphasis in original).
We are in a similar position in this case. The trial judge's order does not state whether he considered the evidence offered by defendant and then determined that it was insufficient or whether he merely precluded it without consideration. Without knowing what the trial judge did, we are unable to properly review his sentencing decision. Therefore on remand, the trial judge should enter specific written findings on the existence or nonexistence of each of the statutory mitigating circumstances, see Code 1975, § 13A-5-33(2) (Repealed), and of any additional mitigating circumstances of which evidence is offered.[3]
For the reasons stated in parts one (I) through seven (VII), we affirm the conviction of defendant. For the reasons stated in part ten (X), we remand this cause to the Court of Criminal Appeals for that court to order a new sentencing hearing, at which the trial judge is required to issue specific written findings on all evidence of mitigating factors.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, FAULKNER, JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
[1] The death penalty statute that was in effect at the time of this crime, Code 1975, § 13A-5-30, et seq., was repealed effective July 1, 1981. However, the repeal did "not affect the application of pre-existing law to conduct occurring before 12:01 A.M. on July 1, 1981." Code 1975, § 13A-5-57. Therefore, the provisions and requirements of § 13A-5-30, et seq., are controlling in this case.
[2] Defendant submits that the state waived the argument that he did not have standing to challenge the search and seizure by not raising the issue at trial. See Steagald v. United States,451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). However, the record clearly indicates that in the habeas corpus hearing of April 1, 1977, the district attorney presented the argument that defendant lacked standing to challenge the search.
[3] We note that at the original sentencing hearing the trial court could have considered all the circumstances presented during the guilt phase of the trial that might be relevant to the sentencing decision. *Page 1188