This is an appeal from the denial of a petition for post-conviction relief.
In 1982, James Willie Cochran was convicted of capital murder and sentenced to death. That conviction and sentence were ultimately affirmed on appeal. Cochran v. State, 500 So.2d 1161
(Ala.Cr.App. 1984), affirmed in part, reversed in part, and remanded Ex parte Cochran, 500 So.2d 1179 (Ala. 1985), affirmed on return to remand, Cochran v. State, 500 So.2d 1188
(Ala.Cr.App. 1986), affirmed, Ex parte Cochran, 500 So.2d 1064
(Ala. 1986), cert. denied, Cochran v. Alabama, 481 U.S. 1033,107 S.Ct. 1965, 95 L.Ed.2d 537 (1987).
In 1987, Cochran filed a petition for post-conviction relief under Rule 20, A.R.Cr.P. Temp. After an evidentiary hearing, the petition was denied. On this appeal from that denial, Cochran raises three issues.
 I
Cochran contends that his constitutional rights underBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986), were violated because the prosecution used its peremptory jury strikes in a racially discriminatory manner. He also contends that appellate counsel was ineffective for failing to raise this issue on direct appeal.
Resolution of the issues presented on this appeal requires a review of the entire history of this case. Cochran was initially tried in August of 1977. He was represented by attorneys Mike McCormick and John Carroll. A mistrial was granted during the trial of that case. Cochran,500 So.2d at 1165, 1181. On February 28, 1977, before that trial, Cochran filed a "motion to restrict prosecutorial strikes" which requested that "the District Attorney and his staff be restricted from using their peremptory strikes in a racially biased manner and in the alternative that the District Attorney and his staff not be allowed to use the peremptory strikes." On March 25, 1977, Cochran filed a "challenge to composition of petit jury" alleging, among other things, the systematic exclusion of blacks from the jury rolls. This motion was denied on April 18, 1977, with the comment: "Motion is overruled. Should defendant wish to take testimony on the motion, the Court will reconsider this ruling." We have examined the record of that 1977 trial and find that it contains no request by Cochran to take testimony on this motion. No evidence was presented in any form that, prior to Cochran's trial, the State had engaged in the systematic exclusion of black venire persons. At the trial, there was no objection raised to the prosecution's use of its peremptory challenges.
Cochran was reindicted on October 7, 1977. He was convicted on February 3, *Page 1064 
1978, and sentenced on March 20, 1978. At his second trial, Cochran was again represented by attorneys Carroll and McCormick. On March 31, 1981, that conviction and sentence were reversed on authority of Beck v. Alabama, 447 U.S. 625,100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), and Beck v. State,396 So.2d 645 (Ala. 1980). Cochran v. State, 400 So.2d 435 (Ala.Cr.App.), cert. denied, 400 So.2d 435 (Ala. 1981).
Cochran was tried again, the third time, and convicted in March of 1982. At his third trial, Cochran was represented by attorneys Mike McCormick and Robert Shields. This is the trial and conviction which is the subject of Cochran's petition for post-conviction relief.
The record of that 1982 trial shows that at the conclusion of the voir dire of the jury and before the actual striking of the jury began, the following occurred:
 "MR. MCCORMICK [Defense Counsel]: Your Honor, I was trying to recall, going back to the record again —
"THE COURT: Okay.
 "MR. MCCORMICK: — wasn't there a motion regarding restricting the State from arbitrarily striking blacks in this case?
"THE COURT: I'm sure there was.
"MR. MCCORMICK: I don't recall.
 "THE COURT: I don't really know. It's been so long I've forgotten, but it seems to me there was every motion conceivable to the mind of man, but I couldn't tell you for sure.
 "MR. MCCORMICK: Well, we'd like to renew that motion at this time and make it more specific. If it hasn't been filed in the past —
 "THE COURT: You can put it on the record. I think it would be wise to do it.
 "MR. MCCORMICK: We move at this time to have His Honor restrict the State from arbitrarily striking blacks from the jury, particularly in light of the fact that our last count out of the 42 people in the room on the venire there are only nine blacks.
"THE COURT: I was thinking there were ten.
 "MR. MCCORMICK: There may be ten. I may have miscounted, Judge.
 "THE COURT: I think the last one, the last extra juror that went on, was a black. But I'm not sure of that. It's nine or ten. There were two blacks on the extra panel. And one is off now because she took the place of a man that was sitting in that box on the first box.
 "Well, I'll just say this. I won't grant that motion, but we'll have to be guided by the well-known Alabama-McSwain[1] [sic] case on peremptory strikes. Is that the one?
 "MR. BARBER [Assistant District Attorney]: Yes, sir. Are you talking about the one that came out last month?
 "THE COURT: No. I'm talking about as old as the hills.
 "MR. BARBER: Okay. Well, there was another one last month.
 "THE COURT: And there was a brand new one from Pennsylvania because I gave it to Earl Morgan when he came down and asked me about the Louisiana case[2] on peremptory strikes. I'm just going to be guided by the cases or my idea what the cases were — are. And just assume at this moment that they aren't arbitrarily going to strike them.
 "Okay. Are you all ready to strike or do you want some more time?
 "MR. MCCORMICK: We need some time to go over it, Judge.
"THE COURT: Okay. Take your time."
After the jury was selected, there was no objection to the State's use of its peremptory strikes. In fact, nowhere in any of the voluminous records of Cochran's trials has this Court found any objection to the manner *Page 1065 
in which the State actually exercised its peremptory challenges. On direct appeal, Cochran did raise the issue that the trial judge erred in excusing a juror for cause. Cochran,500 So.2d at 1166, 1183-84.
In the "order on imposition of death sentence" dated April 2, 1982, the trial judge noted: "This case was heard before a jury of nine white females and two white males and one black male, totaling twelve. Two extra jurors (one black and one white female) were excused when jury retired, their names being drawn by chance out of the fourteen by the defendant personally." The trial judge also noted in this order:
 "The striking part of this trial was the handling of this case by the respective lawyers, who already had outstanding reputations for courtroom ability, knowledge of the law and integrity. At no time was an attempt made by the State or Defense to emotionally infect the jury with prejudice, passion or other arbitrary factors in arriving at either verdict.
 "In qualifying, the Court queried the prospective jurors as to bias or prejudice and its influence on their verdict. They responded in the negative by their silence. This Court paid strict attention to any vestige of arbitrary factors or prejudice or bias and found none present in this five day trial."
Cochran appealed his 1982 conviction. On appeal Cochran was represented by Attorney Richard Jaffe. On January 6, 1986, his case was remanded to the circuit court with directions that a new sentencing hearing be held. Cochran, 500 So.2d at 1188. Return to Remand was made on March 19, 1986. On March 26, 1986, Attorney Joel Sogol was appointed as co-counsel to Attorney Jaffe in representing Cochran. Cochran's appellate counsel filed their brief on return to remand on April 22, 1986. Batson
was decided on April 30, 1986.
This Court affirmed Cochran's conviction and sentence in May of 1986. Cochran, 500 So.2d at 1188. Our Supreme Court affirmed that decision in November of 1986. Cochran, 500 So.2d at 1064. In June of 1986, the United States Supreme Court "conclude[d] that our decision in Batson should not be applied retroactively on collateral review of convictions that became final before our opinion was announced." Allen v. Hardy, 478 U.S. 255,106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986). In December of 1986, the Alabama Supreme Court decided that Batson was to be given retroactive application. Ex parte Jackson, 516 So.2d 768,770-772 (Ala. 1986). In January of 1987, the United States Supreme Court held that Batson was to be applied retroactively to all cases, state or federal, pending on direct review or not yet final. The United States Supreme Court denied certiorari in Cochran's case on April 27, 1987. Cochran, 481 U.S. 1033,107 S.Ct. 1965, 95 L.Ed.2d 537 (1987). Under these facts, Cochran's judgment of conviction was not final when Batson was announced.Allen v. Hardy, 478 U.S. at 258 n. 1, 106 S.Ct. at 2880 n. 1;Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 716,93 L.Ed.2d 649 (1987). "By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." Griffith,479 U.S. at 321 n. 6, 107 S.Ct. at 712 n. 6. Cochran had approximately one year after Batson had been decided in which to raise that issue on direct appeal. However, it was never raised.
In his 1987 petition for post-conviction relief, Cochran did not raise any Batson issue. However, an amendment to that petition, filed February 1, 1988, contained the following allegation:
 "Petitioner's rights were violated when the State struck all seven blacks from the venire, which acts and results in the petitioner being tried by an all white jury, in violation of Batson v. Kentucky — particularly when the Court overruled both an oral and a written motion specifically anticipating an all white jury and specifically requesting the Court to prevent the prosecution from striking without good reason black jurors."
Neither the petition nor the amended petition contained any allegation that Cochran's *Page 1066 
appellate counsel were ineffective for failing to raise the issue of Batson on appeal, even though the petition contained allegations that counsel was incompetent on other grounds.
At the post-conviction evidentiary hearing held on February 16, 1988, the circuit judge ruled that Cochran was procedurally barred from raising Batson. Only after that ruling did Cochran's counsel (Sogol and Jaffe — the same as his appellate counsel) attempt to make an oral amendment to the post-conviction petition "to add an incompetency count" for the failure to preserve the Batson issue. Cochran's counsel argued that "our attempt to amend is in response to Your Honor's ruling . . . that we were prevented from presenting the Batson issue." The circuit court agreed with the assistant attorney general who argued that counsel had previously filed one "eleventh hour amendment" and that "if they had thought that [appellate] counsel was ineffective, they would have alleged that he was ineffective for failing to raise this claim when the petition was filed because they raised two other instances of ineffective assistance of counsel." The circuit court stated: "I agree. And I'm going to turn down the right to amend it."
On April 8, 1988, the circuit judge entered a written order denying the petition. With regard to the Batson issue, the judge found as follows:
 "Now to the Batson issue. 'The matter does not appear to me now as it appears to have appeared to me then.' From 'Judicature' February-March, 1988 publication.
 "At the outset of this hearing this court did not wish to hear the Batson motion stating the court's consideration was precluded. The more this court thought about this issue, the more consideration of the issue was required.
 "The Batson opinion was April 30, 1986. The opinions of the Alabama Court of Criminal Appeals, Alabama Supreme Court and after remand November 8, 1985. Application for rehearing overruled January 13, 1986. But regardless of all the dates, the U.S. Supreme Court denied certiorari April 27, 1987 — after the Batson decision, but before the case of Griffin (sic) v. Kentucky, [479 U.S. 314] 107 Sup.Ct.Rep. 708, [93 L.Ed.2d 649], January 13, 1987. Batson applies retroactively to all cases, state or federal, pending on direct review or not yet final when Batson was decided.
 "We must look at the motion in the record dated February 28, 1977 entitled 'Motion to Restrict Prosecutorial Strikes.' It is alleged that the District Attorney and his staff have over a long period of time excluded members of the black race. That defendant was black and victim white; that it is anticipated that this long period of racial discrimination will continue; that such racial exclusion is done in order that defendant will receive excessive punishment. That District Attorney be restricted from using their peremptory strikes in a racially biased manner or deny the state the use of peremptory strikes.
 "See Tr. 535 to 537. Defendant's attorney moved the same as the above motion. Court at that time would not grant the motion, '. . . but we'll have to be guided by the well-known Alabama-Swain case on peremptory strikes . . .' Obviously, the state could not be denied peremptory strikes.
 "The court has attempted to read the remainder of the six volume record and has not been able to locate any further reference by any lawyer, defendant or state, to anything having to do with racially discriminatory strikes. The pattern, if any, of discriminatory strikes is not present. There is no evidence of exclusion of the black race.
 "The composition of the jury (black v. white) is not shown in the record. We are unable to discern how many blacks and whites were on the jury. The record does not raise an inference that the state was engaged in purposeful discrimination. The record does not show that the state exercised its peremptory strikes to remove blacks from the venire.
"Ex parte Watkins, 509 So.2d 1074 [Ala. 1987] *Page 1067 
"What are the conclusions from the above?
 "One: The defendant's lawyers were of the opinion there were no discriminatory strikes of blacks.
 "Two: There was no 'plain error' in the proceedings whether or not it was brought to the attention of the trial or appellate courts.
 "Three: There is no evidence of discriminatory striking of black jurors.
 "Four: Certainly the defendant's attorneys, five years before Batson, cannot be guilty of ineffective counsel when there is no evidence in the record on which to base such an assertion. There is no evidence to indicate that this court must have a hearing on the Batson issue — there is no evidence on which such a hearing can be held. This court finds that there is no ground nor evidence to justify further hearing on this issue. This court finds that there was no violation of the Batson opinion. This court finds there was no discriminatory striking of blacks within the criteria outlined by the Batson decision, Griffin
(sic) v. Kentucky [479 U.S. 314], 107 Sup.Ct.Rep. 708 or the Alabama Ex parte Branch decision of the Alabama Supreme Court."
On April 13, 1988, Cochran filed an "objection to trial court's findings on Rule 20 motion" in which he alleges that, at the evidentiary hearing on February 16, 1988, the trial court "precluded" counsel from presenting evidence on theBatson issue. Attached to the objection are "a copy of the jury list that attorneys Sogol and Jaffe obtained from Deputy District Attorney David Barber in addition to the strike sheets provided by Attorney Mike McCormick." Cochran alleges that this evidence "demonstrates clearly" that there were 9 blacks on the venire, that the State used 8 of its peremptory strikes to remove blacks, and that the 9th black was selected as an alternate and later removed.
These allegations, as well as the finding of the circuit judge that "[t]he composition of the jury (black v. white) is not shown in the record," are in contradiction of the trial judge's finding in his order on imposition of the death sentence of April 2, 1982, that "[t]his case was heard before a jury of nine white females and two white males and one black male, totaling twelve. Two extra jurors (one black and one white female) were excused when jury retired, their names being drawn by chance out of the fourteen by the defendant personally." This Court has carefully studied the jury list and strike sheets attached to Cochran's objection to the trial judge's findings. From those exhibits, we cannot, with any degree of certainty, reach any conclusion as to the number of blacks on the venire, the number of blacks removed by peremptory challenge, or the number of blacks who actually served on the jury.
The record contains a transcript of the qualification and the voir dire proceedings in the selection of the jury. Although this Court affirmed Cochran's conviction and sentence on return to remand on May 27, 1986, after Batson, there is no plain error in the record on appeal. We agree with the circuit judge in his finding that the record contains no plain error of anyBatson violation. Every objection to the State's use of its peremptory challenges was anticipatory. There is no evidence that the State always or consistently used its strikes in a racially discriminatory manner. There was no objection at trial to the manner in which the State actually used its strikes. This objection was first raised six years after Cochran's conviction and after all avenues of direct appeal had been exhausted. Here, as in Ex parte Watkins, 509 So.2d 1074,1076-1077 (Ala. 1987), cert. denied, Watkins v. Alabama,484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), "The record as a whole simply does not raise an inference that the state was engaged in the practice of purposeful discrimination. . . . The defendant cannot successfully argue that error is plain in the record when there is no indication in the record that the act upon which error is predicated ever occurred (i.e., the state's use of its peremptory challenges to exclude blacks)." Id.
Under the circumstances present, Cochran is procedurally barred from relief *Page 1068 
on his claim that the State actually used its peremptory challenges in a racially discriminatory manner in violation ofBatson, supra. As we have observed, that issue could have been raised on direct appeal. "A petitioner will not be given relief under . . . [Rule 20] based upon any ground which could have been but was not raised on appeal." Rule 20.2(a)(5), A.R.Cr.P.Temp. See also Bell v. State, 535 So.2d 210 (Ala. 1988).
Relying principally on Reed v. Ross, 468 U.S. 1,104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), Cochran argues that he is not procedurally barred from raising the Batson issue because theBatson argument was a "novel" issue. Reed held:
 "When a procedural default bars litigation of a constitutional claim in state court, a state prisoner may not obtain federal habeas corpus relief absent a showing of 'cause and actual prejudice.' "
* * * * * *
 "[W]e hold that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." Reed, 468 U.S. at 11, 16, 104 S.Ct. at 2908, 2910.
"[C]ounsel's failure to raise a particular claim or claims on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts." Murray v. Carrier, 477 U.S. 478, 492,106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986).
 "Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial. To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." Carrier, 477 U.S. at 492, 106 S.Ct. at 2648.
While the "novelty" of an issue may constitute cause for the failure to raise that issue on appeal, the cause and prejudice test for excusing compliance with a State's contemporaneous-objection rule at trial, Wainwright v. Sykes,433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and on appeal, Reed, supra, is a federal rule involving federal review on federal habeas corpus. Rule 20, A.R.Cr.P.Temp., contains no similar rule excusing the failure to raise an issue at trial or on appeal.
 "A federal habeas corpus court will not address an issue if the petitioner may not pursue that issue in state court because of a procedural default unless he can overcome this impediment by showing cause for and actual prejudice from the default. Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Alabama has contemporaneous objection rules that preclude appellate review of issues that could have been raised at trial, Wood v. State, 416 So.2d 794
(Ala.Crim.App. 1982), Moore v. State, 415 So.2d 1210
(Ala.Crim.App.), cert. denied, 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982), Fagan v. State, 412 So.2d 1282 (Ala.Crim.App. 1982), and coram nobis review of issues that could have been raised on direct appeal, Dobard v. State, 455 So.2d 281 (Ala.Crim.App. 1984), Magwood v. State, 449 So.2d 1267 (Ala.Crim.App.), late appeal denied, 453 So.2d 1349 (Ala. 1984)." Magwood v. Smith, 791 F.2d 1438, 1444 (11th Cir. 1986).
Issues raised at trial but not on direct appeal are barred from consideration in post-conviction proceedings. Dobard v. State,455 So.2d 281, 283 (Ala.Cr.App. 1984). "[I]ssues raised in the petition are not cognizable in a coram nobis proceeding, because they were either dealt with on direct appeal or could have been raised at trial or on direct appeal and were not." Exparte Clisby, 501 So.2d 483, 484 (Ala. 1986). Except in cases in which the death penalty has been imposed and the error is "plain," Rules 39(k) and 45A, A.R.A.P., a contemporaneous objection is required in order to preserve error for review on direct appeal. Biddie v. State, 516 So.2d 846 (Ala. 1987).
Although Cochran has been sentenced to death, the alleged error in this case is not "plain" as we have indicated above. In *Page 1069 
fact, the record shows that this alleged error simply has not been preserved at all. Cochran's objection was made in anticipation of the prosecution's alleged racially discriminatory use of its peremptory strikes. There was no evidence offered to support this objection despite the trial judge's indication that he would reconsider his denial of the motion if evidence were presented. There was no objection to the manner in which the State exercised its peremptory strikes. There was no motion for a new trial.
All these facts support our conclusions that there is no plain error in the record and that there is nothing in the record to indicate or imply that the State engaged in racial discrimination in the selection of the jury.
 II
Although the circuit court refused to allow Cochran to amend his petition to include the allegation that appellate counsel were ineffective for failing to raise the Batson issue, see Part IV of this opinion, our review convinces us that counsel were not ineffective under the standard of Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984).
 "It is well established that a defendant has the right to effective counsel on appeal. Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) [cert. denied, 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984)]. However, counsel's failure to raise issues on appeal that only later gain 'judicial recognition' does not constitute ineffectiveness, id.; Sullivan v. Wainwright, 695 F.2d 1306, 1309 (11th Cir.), cert. denied, [464] U.S. [922], 104 S.Ct. 290, 78 L.Ed.2d 266 (1983), 'and counsel need not brief issues reasonably considered to be without merit.' Alvord, 725 F.2d at 1291 (citing Mendiola v. Estelle, 635 F.2d 487, 491 (5th Cir. 1981); Hooks v. Roberts, 480 F.2d 1196, 1197-98 (5th Cir. 1973), cert. denied, 414 U.S. 1163, 94 S.Ct. 926, 39 L.Ed.2d 116
(1974)).
 "We think that appellate counsel also need not raise issues that he reasonably concludes will not be considered on the merits by the appeals court." Francois v. Wainwright, 741 F.2d 1275, 1285 (11th Cir. 1984).
Counsel need not raise every "nonfrivolous" issue on appeal.Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308,77 L.Ed.2d 987 (1983).
A claim of the ineffective assistance of appellate counsel for failing to raise an issue on direct appeal requires the reviewing court to examine the trial record:
 "When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).
See also Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639,91 L.Ed.2d 397 (1986). Here, a review of the trial record does not disclose a prima facie violation of Swain or Batson. There is no evidence in the record that the State repeatedly engaged in the systematic exclusion of blacks from the jury venire in case after case in violation of Swain v. Alabama, supra, or that the State engaged in purposeful discrimination based solely upon the prosecutor's exercise of peremptory challenges at Cochran's 1982 trial in violation of Batson v. Kentucky, supra. Since there was no objection to the State's actual use of its peremptory strikes, since trial counsel was aware of the issue of racial discrimination in the selection of the jury, and since there has been no allegation that trial counsel were ineffective in failing to present the Batson issue at trial, it is not unreasonable to conclude, as did the circuit court, that there was no racial discrimination in the selection of the jury.
"[W]e emphasize that the right to effective assistance of appellate counsel does not require an attorney to advance every conceivable argument on appeal which the *Page 1070 
trial record supports." Gray v. Greer, 778 F.2d 350 at 353 (7th Cir. 1985) (emphasis added), citing Evitts v. Lucey,469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Here, the record simply does not support the argument that the constitutional guarantees expressed in Batson were violated or that appellate counsel, who had not represented Cochran at trial, should have been aware that matters outside the record might prove a Batson
violation. In fact, the only alleged "evidence" of any improper use by the State of its peremptory challenges is in the form of the list of venire persons and strike sheets of defense counsel which Cochran's present attorneys apparently only recently obtained. These counsel were the same as Cochran's appellate counsel. The fact that the only evidence which proves theBatson violation is outside the record and under usual circumstances is not included in the record on appeal from a conviction, affirms and supports our conclusion that appellate counsel were not ineffective for failing to raise this issue on direct appeal simply because there was nothing in the record to indicate that Batson was, in fact, an issue.
 III
Cochran contends that appointed trial counsel were ineffective because they failed to request a psychiatric or psychological evaluation for use as a mitigating circumstance at the sentencing hearing. In his supplemental order on imposition of the death sentence, the trial judge found:
 "The trial court does not construe the directions of the appellate courts to require additional investigation or the taking or seeking of further evidence. It is acknowledged by the appellate attorneys that in the trials of this case, reaching the sentencing phase, experienced criminal lawyers (one of whom is known nationwide for his representing capital case defendants) were involved. The transcript contains no request, by defendant's attorneys, for further investigation, nor availability of further mitigating evidence, nor a continuance for such. Nor did the trial judge. No contention is made that they failed in their duty to defendant or were in any wise not competent." Cochran, 500 So.2d at 1189.
With regard to this issue, the circuit judge made the following findings in his order of April 8, 1988, denying the petition:
 "Although the petition is very broad, this hearing, on February 16, 1988, was almost exclusively devoted to the charge that defendant's attorneys did not provide effective assistance as counsel in failing to file an application for defendant's psychiatric or psychological examination at any time before the trial of defendant. This shall be dealt with first.
 "The only other issue raised by defendant-petitioner is the Batson issue which will be discussed later.
 "The lawyers involved are attorney Mike McCormick, now Judge McCormick, district judge of the Tenth Judicial Circuit at Birmingham; former attorney John Carroll of the Southern Poverty Law Center, now Judge Carroll, federal magistrate at Montgomery and attorney Robert Shields still practicing law in Birmingham. Petitioner's attorneys have immediate denial that any such allegation is made against Judge Carroll. As a matter of fact, he was not subpoenaed, but came and testified at the request of this court.
 "The capital case was first set for trial with Attorneys McCormick and Carroll prepared and ready in 1977, the jury struck and trial commenced. Near the end of the state's presentation, a mistrial was called on a matter dealing with a drastic change of a witness' testimony in no wise relevant to the matter at hand.
 "In 1978, Attorneys Carroll and McCormick completed preparations and again struck a jury and tried the case to conclusion. Defendant was found guilty and sentenced to death.
 "Then came Beck and all capital cases on appeal in Alabama were required to try the case over again under the rulings of the Beck opinion.
 "The case was set for trial on October 5, 1981, same two attorneys still in the picture. On October 5, 1981, the day of the trial, Attorney Carroll advised the *Page 1071 
court that his mother was critically ill and he would be unable to be present. Both Carroll and McCormick had again prepared this case for trial. It was continued.
 "It seems unnecessary to state that McCormick and Carroll had prepared this case for trial three times. Indeed, they had voir dired between sixteen and twenty-two witnesses, on suppression motions or related issues, before the first trial was set. These hearings exceeded three or four days (this latter statement is from memory of things over ten years ago). Had they come to know the background of defendant including, but not restricted to, prior convictions for robbery and murder 2°? It would appear that able lawyers would have known the entire background of a client after going through the above proceeding.
 "And were they able lawyers? By 1981 the name of John Carroll was known throughout Alabama as working with the Southern Poverty Law Center representing defendants in capital cases. Mike McCormick was spending eighty percent of his time on criminal cases after a period of being a deputy district attorney. At the last trial, the one under scrutiny, who came after Judge Carroll left the scene, was attorney Robert Shields taking Attorney Carroll's place.
 "Attorney Sogol, in the hearing held on February 16, 1988, asked Judge Carroll whether he would have done a social history if the defendant throughout his childhood displayed antisocial behavior, that he had frequent fights with his father, many difficult family situations, if you had this information available would it have made any difference going into the third trial, by way of mitigating circumstances? (Judge Carroll was of the opinion that anti-social behavior was not a mitigating circumstance.)
 "The defendant's attorney, Mr. Sogol, after referring to the robbery and murder 2°? in question, time after time referred to a history of extended family disputes, family violence and antisocial behavior, none of which was in evidence and none had been testified to by any witness. The question based on the above unsupported assertions was whether there was a need for a social background investigation.
 "There is absolutely no evidence before this court of defendant's antisocial behavior, or family violence, or extended family disputes. It is all lawyers talk.
 "Was a social background investigation conducted before the trial made the basis of this petition and hearing? It was ordered by this court. The attorneys for the state and defendant had it available on and probably before April 5, 1978.
 "We quote in part from the background investigation as follows:
 "Defendant born November 29, 1942, Lee County, Alabama. Father lives somewhere in Birmingham — where not known to defendant. Father employed 32 years by Birmingham Slag, now Vulcan Materials. No known criminal record.
 "Parents separated in 1970 and mother lives in Syracuse, N.Y. Defendant is in contact with her often by phone and letters; sister Katie, lives with mother; brother Roy, lives with mother, employed by Chrysler Motors; brother Robert, lives Hueytown, Alabama, works U.S. Steel; sister Jennifer, attends Albany University, Syracuse.
 "Defendant-petitioner denies any juvenile record, was once suspended from school and 'his mother had to carry him back. . . . always had a good relationship with his family members while growing up, but his father had sort of given up on him at this time.' If the above be antisocial behavior, then many of us should head for a psychiatrist.
 "Defendant, while unmarried, had one son who lives in Michigan. Defendant divorced from wife in 1977.
 "It is stated Cochran is in excellent health, denies being treated for any mental disorders. 'He possesses a little above average intelligence.' He attended Dolomite Junior High and Westfield High and was in the 12th grade when he quit following a murder charge (which *Page 1072 
we all know resulted in Murder 2° plea). Never been in debtor's court and at that time owed a jewelry store $400.00.
 "He last worked for O'Neil Steel for 20 months at $190.00 per week. Lost job when parole revoked. Next worked for Hart-Greer as a driver earning $2.00 an hour but quit for more money. Before that worked for Marshall Durbin at $2.00 an hour but left to go with Hart-Greer. If the writer's memory (poor at best) serves correctly, a person from Hart-Greer testified to his good character in one of the trials.
 "The home address he gave the investigator was wrong. He was not known in the neighborhood. Further information could not be obtained from the Montgomery Probation Office.
 "Now his criminal record, the 1961 murder 2° and the robbery, 1974, all are aware of. Possession of a pistol in Batavia, N.Y. — $100.00 fine. A speeding ticket and improper turn should not blemish his social background. Obviously, two prior convictions spread over thirteen years are no reason for an evaluation.
 "Look at defendant's Exhibit 1. A full and complete investigative report was made by the probation department. Is there anything in this report that gives rise to the need for a psychiatric or psychological evaluation? After reading the report, how can an attorney be judged incompetent when there is nothing that alerts, prompts or raises the need of an evaluation? Even hindsight does not reveal, to this court, incompetent counsel. The investigative report is dated April 5, 1978.
 "Strickland v. Washington [466 U.S. 668, 104 S.Ct. 2052] — 80 L.Ed.2d 674 [1984] Ineffective Assistance of Counsel.
 "Two part test of assistance is (1) reasonable effective assistance and (2) reasonable probability of different result with effective assistance.
 "Given the totality of the circumstances, the benchmark for judging must be whether counsel's conduct intermined (sic) the proper functioning of the adversarial process so that one could not rely on the trial to produce a just result.
 "Defendant is required (1) to show attorney's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.
 "Did defendant show that the representation fell below an objective standard of reasonableness? Scrutiny of counsel's conduct is to be given esteem and respect. Bear in mind we should remember hindsight is involved, evaluate the circumstances and conduct at that time. We must indulge in strong presumption that attorney's conduct falls with the wide range of reasonable professional assistance. Defendant should show that there was a reasonable probability that, but for attorney's error, the result would have been different. This court finds that the result would have been no different.
 "See, too, Ex parte Daniel, 459 So.2d 948 [Ala. 1984] as was stated in Lindsey v. Smith, 820 F.2d 1137 (11th Cir.) [1987] the criteria was whether representation by the defendant's counsel fell below an objective standard of reasonableness and which the defendant was prejudiced by his performance. This court finds that defendant's counsel were not incompetent under the law and the facts of this case insofar as this issue is concerned."
Initially, we must observe that this issue could have been, but was not, raised on direct appeal. Cochran's appellate counsel was different from his trial counsel. Hope v. State,521 So.2d 1383, 1384 (Ala.Cr.App. 1988). Therefore, Cochran should not now be heard to complain. Rule 20.2(a)(5), A.R.Cr.P.Temp.
Moreover, our review of the record convinces us that Cochran has failed to prove that the failure to request a mental evaluation constituted unprofessional conduct and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068. Here, there is still no evidence that a mental evaluation was warranted or that it *Page 1073 
would reveal evidence in mitigation of the crime for which Cochran had been convicted.
At the post-conviction hearing, three of Cochran's former trial counsel testified. John Carroll testified that "we decided to fight the battle in this case in the guilt phase. Because, again as I recall, we had a guilt-phase defense or at least the State's evidence in the guilt phase was not all that strong." He testified to the effect that the state psychiatrists would have concluded that Cochran had an antisocial personality "which is not something that really is a mitigating factor." Carroll also testified that, "if you can get a psychological evaluation done, you ought to get it done in every capital case."
Attorney Mike McCormick testified that he had "spent a lot of time with Willie over the years, so I knew Willie pretty well." He indicated that he had never discovered anything that led him to believe that Cochran had any mental problems, or that led him to believe that Cochran had any history of mental problems. He further testified that, although no mental evaluation was done, "we did everything humanly possible" to discover if Cochran had a mental problem worth showing to the jury.
Attorney Robert Shields testified Cochran did not display any mental problems. He stated that, after the trial and before the sentencing hearing, he contacted several members of Cochran's family. The family's response "was more in the nature of they had given up on Mr. Cochran rather than that he had any kind of mental deficiency or mental problems." The family did not relate to him any history of family violence and Cochran "never indicated that he had a history of mental illness."
At this hearing, several other attorneys expressed their professional judgment that a mental evaluation should, ought to, or must be conducted before the sentencing hearing in any capital case.
Under these circumstances, we find that trial counsel were not ineffective under the test of Strickland v. Washington, supra.
Contrary to Cochran's contentions, the record shows that the decision not to request a mental evaluation was the exercise of reasonable professional judgment and not an error which could be viewed as a deficiency in professional performance. See Annot., 17 A.L.R.4th 575, § 16 (1982). From the testimony at the post-conviction hearing, we conclude that Cochran's defense counsel did not request a mental evaluation because there was no reasonable indication that such an evaluation would have been beneficial to Cochran's defense at trial or that it would have supplied mitigating evidence at sentencing. A tactical decision had been made to emphasize the weakness of the State's case. Julius v. Johnson, 840 F.2d 1533, 1542 (11th Cir. 1988), modified, 854 F.2d 400 (11th Cir. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988) (Trial counsel's alleged failure to present all available mitigating evidence during the sentence phase was an informed decision within the range of professional competence where "[c]ounsel simply made the informed decision that the best way to save Julius' life was to argue to the jury that there was still some doubt whether or not Julius committed the crime."); Ex parte Daniel,459 So.2d 948, 952-53 (Ala. 1984), cert. denied, Daniel v.Alabama, 471 U.S. 1009, 105 S.Ct. 1878, 85 L.Ed.2d 170 (1985) (The decision not to request a second psychiatric evaluation was reasonable where "defense counsel affirmatively considered the possible practical effect before a jury of a plea of not guilty by reason of insanity, and weighed the success of such a plea against the evidence contained in the psychiatric report."); Horsley v. State, 527 So.2d 1355, 1361-62
(Ala.Cr.App. 1988) (petition for cert. filed) (failure to seek psychiatric assistance did not render counsel's assistance ineffective where counsel had no reason to suspect that the accused suffered from a mental deficiency). "A lawyer's election not to present mitigating evidence [after sufficient investigation] is a tactical choice accorded a strong presumption of correctness which is 'virtually unchallengeable.' Sinclair [v. Wainwright, 814 F.2d 1516 (11th Cir. 1987)], 814 F.2d at 1519 (quoting Strickland,466 U.S. at 690, 104 S.Ct. at 2066)." Lightbourne v. *Page 1074 Dugger, 829 F.2d 1012, 1025 (11th Cir. 1987), cert. denied, ___ U.S. ___, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988). This is not a case where defense counsel failed to investigate and present mitigating evidence despite its availability. Armstrong v.Dugger, 833 F.2d 1430, 1432-33 (11th Cir. 1987).
Furthermore, Cochran has failed to demonstrate that the alleged deficient investigation into his mental background and the failure to request a mental evaluation had a prejudicial effect on his sentence. Singleton v. Thigpen, 847 F.2d 668, 670
(11th Cir. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 822,102 L.Ed.2d 812 (1989). In Elledge v. Dugger, 823 F.2d 1439
(11th Cir.), withdrawn in unrelated part on rehearing,833 F.2d 250 (11th Cir. 1987), cert. denied, Dugger v. Elledge, ___ U.S. ___, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988), the accused alleged that his trial counsel failed to investigate his past, and, specifically, that counsel made no effort either to locate an expert psychiatric witness or to put on background character testimony from family members in mitigation. 823 F.2d at 1444. That court held that counsel's total failure to investigate possible witnesses when he was aware of the accused's past was unprofessional performance. Elledge, 823 F.2d at 1445. However, that court also found that counsel was not ineffective because the accused could not demonstrate that he was prejudiced by counsel's failure to investigate his mental condition and produce a favorable expert witness.
 "In other words, Strickland requires only that counsel conduct a reasonable investigation. Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. To prove that he was prejudiced by counsel's failure to investigate and to produce a certain type of expert witness, a habeas petitioner must demonstrate a reasonable likelihood that an ordinarily competent attorney conducting a reasonable investigation would have found an expert similar to the one eventually produced. If such a result was not reasonably probable, the petitioner was not prejudiced by counsel's failure to investigate. Merely proving that someone — years later — located an expert who will testify favorably is irrelevant unless the petitioner, the eventual expert, counsel or some other person can establish a reasonable likelihood that a similar expert could have been found at the pertinent time by an ordinarily competent attorney using reasonably diligent effort." Elledge, 823 F.2d at 1446.
Here, Cochran has not even demonstrated the existence of any past mental history that would serve in mitigation of his offense. Even if we accept as true the allegations of Cochran's counsel at the post-conviction hearing concerning Cochran's past, Cochran still "has not demonstrated a reasonable probability that, if adduced at trial, the psychiatric and background evidence presented in his [post-conviction] proceeding would have caused the sentencer to conclude 'that the balance of aggravating and mitigating circumstances did not warrant death.' Strickland, 466 U.S. at 695, 104 S.Ct. at 2069,80 L.Ed.2d at 698." Elledge, 823 F.2d at 1448.
 IV
Cochran's last contention is that the circuit court erred in not allowing him to orally amend his petition. He argues that because of the unique nature of Rule 20 proceedings the court must allow the presentation of every possible issue during the evidentiary hearing. We disagree.
Cochran filed his Rule 20 petition on June 12, 1987. The original petition contained two assertions of ineffectiveness, both of which dealt only with trial counsel's performance. On February 1, 1988, Cochran was allowed to file an amendment to his petition. This amendment did not contain any additional allegations of ineffectiveness. On February 16, 1988, during the Rule 20 evidentiary hearing, and after the court had ruled adversely on the defendant's Batson claim, Cochran offered to orally amend his petition to include a claim of ineffective assistance of counsel on the part of appellate counsel for failing to raise the Batson argument on appeal. This was the first time this issue had ever been mentioned. The circuit court did not allow the amendment. *Page 1075 
Rule 20.7(b) of the Alabama Temporary Rules of Criminal Procedure reads as follows: "Amendments to pleadingsmay be permitted at any stage of the proceedings prior to the entry of judgment." (Emphasis added.) The clear import of the language used in Rule 20.7(b) is that a petitioner does not have an absolute right to amend his petition prior to the entry of judgment.
"Amendments are to be freely allowed when justice requires."Ex parte Tidmore, 418 So.2d 866, 868 (Ala. 1982). "[A]mendments should be freely allowed and . . . trial judges must be given discretion to allow or refuse amendments. . . . The trial judge should allow a proposed amendment if it is necessary for a full determination on the merits and if it does not unduly prejudice the opposing party or unduly delay the trial." Record DataInternational, Inc. v. Nichols, 381 So.2d 1, 5 (Ala. 1979) (citations omitted). "The grant or denial of leave to amend is a matter within the sound discretion of the trial judge and is subject to reversal on appeal only for an abuse of that discretion. Walker v. Traughber, 351 So.2d 917 (Ala.Civ.App. 1977). The trial court acts within its discretion so long as its disallowance of an amendment of pleadings is based upon some valid ground, such as actual prejudice or undue delay.Poston v. Gaddis, 372 So.2d 1099 (Ala. 1979)." Ex parteReynolds 436 So.2d 873, 874 (Ala. 1983). Although the cases cited in this paragraph deal with the interpretation of Rule 15, A.R.C.P., the principles expressed have equal application here.
Cochran attempted to orally amend his petition 8 months after his original petition had been filed, 15 days after that petition had been previously amended, after the evidentiary hearing had begun, and after the circuit court had ruled on a related ground of his petition. Cochran cannot claim that his proposed amendment was based on surprise, newly discovered evidence, or changed circumstances. "Courts may properly refuse permission to amend . . . where there is no showing of diligence or that the facts were unknown to the applicant prior to his application." 61A Am.Jur.2d § 312 at 301 (1981). See also Robinson v. Kierce, 513 So.2d 1005, 1006-07 (Ala. 1987);National Distillers and Chemical Corp. v. American LaubscherCorp., 338 So.2d 1269, 1273-75 (Ala. 1976). Consequently, we hold that the trial judge did not abuse his discretion in denying the amendment.
Cochran's counsel have been diligent and aggressive in all aspects of their representation of Cochran before this Court. Counsel have again demonstrated that they deserve the excellent reputation they have before this Court.
After reviewing all of the issues raised by Cochran on this appeal, we find that the judgment of the circuit court denying his petition for post-conviction relief is due to be affirmed.
AFFIRMED.
All Judges concur.
[1] Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759
(1965).
[2] The Pennsylvania and Louisiana cases have not been identified. As far as this Court can determine, at the time in question, both states adhered to the rule of Swain v. Alabama,380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). State v. Perry,420 So.2d 139, 144 (La. 1982), cert. denied, McCray v. New York,461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983);Commonwealth v. Green, 321 Pa. Super. 246, 467 A.2d 1346,1347-48 (1983).