This an appeal from a jury verdict in favor of Robert Nichols' estate and Legal Messenger Service of Ala., Inc., appellees, against Record Data International, Inc., and Record Data, Inc., appellants. Appellants contend that the trial court committed numerous errors at trial and that the verdict was excessive. We affirm.
Record Data International, Inc., (RDI) and Record Data, Inc., RDI's parent corporation, are in the business nationwide of searching and verifying official court documents. The information collected is sold to various clients, of whom the majority are apparently lending institutions. RDI entered into a franchise agreement with Robert Nichols. There is a dispute about the parties to the agreement. RDI says it entered into the agreement solely with Robert Nichols, individually. Nichols' estate contends that the parties were RDI, Robert Nichols, and Legal Messenger Service of Alabama, Inc., a corporation which Nichols formed.
Nichols became ill and RDI sent people into Alabama to run Nichols' business, allegedly to help the Alabama office, which, according to RDI, was in a chaotic condition. Nichols subsequently died as a result of his illness. RDI then took over the operation of the Alabama business, contending that the takeover was proper under the franchise agreement because the agreement called for termination and return of various items to RDI upon the death of Nichols.
Appellees then commenced suit against RDI alleging fraud, violation of common law copyright, interference with contracts, breach of the franchise agreement, willful trespass, and conversion. All the causes of action, except breach of contract, sought punitive damages. The issues were tried and a verdict was returned in favor of the Nichols estate and Legal Messenger Service of Ala., Inc. for $225,000.
Appellants first contend that the trial court erred in admitting into evidence a schedule showing the consolidated tax returns on the grounds that the admission of the schedule showed Record Data, Inc.'s wealth to the jury, contrary to established Alabama law, citing Southern Life HealthInsurance Co. v. Whitman, 358 So.2d 1025 (Ala. 1978).
In Southern Life the defendant's financial position was admitted over defendant's objection for the express purpose of aiding the jury in its assessment of punitive damages. This court noted its long standing rule that evidence of the defendant's wealth is highly prejudicial and, therefore, inadmissible. Southern Life, supra at 1026. However, SouthernLife is distinguishable from the case at bar. First, there was a timely objection in Southern Life. In the case at bar there was no objection when appellee's attorney asked for a specific dollar amount of the gross receipts of certain subsidiaries, viz.:
 "Q. What was the highest gross sales figure for any subsidiary that your company had in the year '73, '74? What branch?
 "MR. WEAVER: Judge, we're going to object to that in that it has no bearing and no relationship to this case nor this Alabama operation and is in no way affected or influenced by anything that's subject to this lawsuit.
 "THE COURT: In relation to the question of value I overrule."
* * * * * *
 "Q. Which branch had the highest gross receipts in that particular time period?
"A. Georgia.
"Q. And how much were their gross receipts?
"A. $241,242.00.
 "Q. What was the next highest gross receipts subsidiary that you see there, please, sir?
"MR. WEAVER: We object . . . on the same grounds.
"THE COURT: Overruled."
* * * * * *
 "Q. You're talking about Record Data of Alabama across the street here; is that the one?
"A. Yes. *Page 4 
"Q. How much was that figure?
"A. $9,060.00."
As the record clearly shows, no objection was interposed when the witness was asked for specific dollar figures of gross receipts. It is our well-settled rule that a party who fails to object to matters at the trial level may not raise these matters for the first time as the basis for an appeal.Costarides v. Miller, 374 So.2d 1335, 1337 (Ala. 1979). An objection must be made and a ground stated therefor or the objection and error are deemed to have been waived.Constarides, supra.
Southern Life is additionally distinguishable from the case at bar in that the evidence in Southern Life was introduced expressly to aid the jury in its determination of punitive damages. In the case at bar, the evidence was properly introduced to impeach the prior testimony of a defense witness, Bruce Felder, concerning the value of the Alabama business taken over by the defendants. It was appellants' contention the business was worth little, if anything; the appellees have contended the business was worth a great deal.
In this respect, the facts in the case at bar are more closely in point with Cities Service Oil Co. v. Griffin,357 So.2d 333 (Ala. 1978). In Cities Service the appellant contended that the trial court committed reversible error when it permitted plaintiff's counsel to elicit from the defendant's witness Moore, upon cross-examination, evidence of Citgo's 1975 gross sales and 1970 net profit. Moore had testified extensively on direct examination and "had painted a verbal portrait of the company's poor business position." CitiesService, supra at 343. In affirming the trial court's ruling admitting the evidence on cross-examination, the court held, "[B]ecause Moore had painted a verbal portrait of the company's poor business position, we fail to see how any undue prejudice resulted to it when evidence of its gross sales and net profits were elicited from the same witness." Cities Service, supra at 343.
In the case at bar, Mr. Felder had testified, in response to a question as to "the amount that this business [the Alabama business] would be worth," that, "It's obviously a deficit situation." In addition, Felder testified, when asked for a specific dollar amount of the value of the Alabama business, "We have offered eighteen hundred as payment for the fixed assets."
In its order denying appellants' motion for a new trial, the trial court held:
 "The Court is of the opinion that the information contained in defendants' consolidated federal income tax return was relevant to the issues presented in this case. . . . [T]he federal income tax return disclosed the revenues being received from the operation of the Alabama franchise and, therefore, provided relevant evidence as to the value of the Alabama franchise." (Emphasis supplied.)
We cannot say that the trial court erred in this respect.
Moreover, when appellees' attorney offered to introduce copies of the schedules, only a general objection was entered. Again, this fact is closely parallel to Cities Service, where appellant's attorney made only a general objection to the proffered evidence. The court held there, and its holding is equally applicable here, "We have shown that this evidence was admissible, hence the general objection was insufficient for the purposes of appeal." Cities Service, supra at 343.
Appellants next contend that the trial court erred in permitting Record Data, Inc., to be added as a defendant while trial was in progress. Appellants contend that the court should have submitted the issue of whether Record Data, Inc., was a proper defendant — under a theory of either alter ego, piercing the corporate veil, or corporation by estoppel — to the jury as a fact question. We cannot agree with this contention. In its order denying appellants' motion for new trial, the trial court held:
 "Although the Court had previously ordered the defendants to produce their federal income tax returns, the same were not produced until the trial of this cause had already begun. Examination *Page 5 
of the consolidated federal income tax return indicated that the parent company was designated as Record Data, Inc., a corporation, and that this corporation in turn controlled a number of subsidiary corporations, one of which was designated as Record Data International, Inc., a corporation. . . . Bruce B. Felder was president and in control of all the corporations . . . and it was he who authorized and directed the conduct made the basis of the plaintiffs' claims. In view of the fact that the plaintiffs had been unable to ascertain the name and designation of the parent corporation until after the trial had begun, this Court under Rule 15 (b) of the Alabama Rules of Civil Procedure amended the complaint to add Record Data, Inc., a corporation, as party defendant."
Since the adoption of the Rules of Civil Procedure, we have said that amendments should be freely allowed and that trial judges must be given discretion to allow or refuse amendments.Stead v. Blue Cross-Blue Shield, 294 Ala. 3, 310 So.2d 469
(1975). The trial judge should allow a proposed amendment if it is necessary for a full determination on the merits and if it does not unduly prejudice the opposing party or unduly delay the trial. Huskey v. W.B. Goodwyn Co., 295 Ala. 1,321 So.2d 645 (1975). We cannot say here that the trial court abused its discretion in permitting Record Data, Inc., to be joined as a party defendant. Moreover, appellants made no objection when appellees moved to amend the complaint; they cannot now contend on appeal that allowing the amendment was error. Costarides, supra. The appellants also entered no objection to the trial court's oral charges to the jury, wherein the court submitted to the jury the question as to whether Record Data, Inc., and RDI were liable to the plaintiffs. If appellants were not satisfied with the court's charges as given, and wanted an instruction concerning the theories of alter ego, piercing the corporate veil, and corporation by estoppel, they should have objected and offered appropriate instructions. They did not. Rule 51, ARCP provides:
 ". . . No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. . . ."
We hold, therefore, that appellants waived any objection to the amendment and to the oral charge given to the jury at the close of the case. Thus, appellants' contention that the court improperly applied one of the theories of either alter ego, piercing the corporate veil or corporation by estoppel, to the case at bar, is without merit.
Appellants' third contention is that the trial court erred in allowing Richard McCauley to testify as an expert witness. Appellants contend that McCauley did not possess the requisite knowledge, training, or education on the issue of what price one would pay for an existing, going business, that the methodology he used to value the business is not accepted practice, and that McCauley was a direct competitor of Record Data International and was biased and totally subjective in his analysis.
The question as to whether a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for palpable abuse of that discretion. Maslankowski v.Beam, 288 Ala. 254, 259 So.2d 804 (1972). The opinions of experts on any question of science, skill, trade, or like questions are always admissible; and such opinions may be given on the facts as proved by other witnesses. Maslankowski, supra.
Before McCauley testified as to his opinion of the value of the Alabama franchise, he was asked numerous questions concerning his background with RDI and concerning his own similar business in Georgia. He was properly qualified as an expert. The trial court did not err in admitting his testimony. The questions concerning *Page 6 
the methodology McCauley used and his possible bias toward RDI were proper subjects for cross examination, but do not render his testimony inadmissible.
Appellants' next contention is that the trial court erred in denying appellants' motion for mistrial because of testimony of a witness for appellees concerning "settlement." The granting of a mistrial is within the sound discretion of the trial court because he is present to see the effect, if any, that the alleged improper statement had on the jury. McCart v. Devine,51 Ala. App. 678, 288 So.2d 739 (1973). When appellees' witness, Sandra Hodo, mentioned the word "settlement," in giving answer to an unrelated question, appellants' counsel immediately objected and moved for mistrial. The court immediately called for a recess and conducted a hearing outside the presence of the jury to determine the context of the witness's testimony. During that hearing the following occurred:
 "Q. . . . [Y]ou said in your testimony out in the Court, in the presence of the Jury, that you called [Mr. Felder] and he talked in terms of settlement. And you said we discussed, I mean Mr. Crow asked you, said did you discuss figures. Is that _ _ _
 "A. Well, the gist of it, we were deciding about the furniture and everything. And I know there was a figure given, but I don't remember how much."
* * * * * *
 "THE COURT: . . . [A]s far as what the witness has stated under oath now, seems to me that would be admissible, Mr. Weaver. She is talking about a conversation between her and this man, as I understand it, who is an officer of the Defendant. And he is saying that he is going to buy certain equipment.
 "MR. WEAVER: No, Judge, that was not her testimony. Her testimony was that he discussed settlement.
 "THE COURT: Well, of course, that's what she is saying now.
"MR. WEAVER: And that's prejudicial.
 "THE COURT: I think by that she meant . . . that was just her way of terming what her way of describing the whole conversation was, but she is saying now, as I understand the witness, that he made a statement in substance that he would see that Hoyt was treated fairly. . . .
"THE WITNESS: Yes.
"THE COURT: You are talking about his estate?
"THE WITNESS: Yes.
 "THE COURT: That he would see that the estate was treated fairly and also would pay for the physical assets; is that right, the furniture and the equipment?
 "THE WITNESS: No. At that time he was saying that you know, he would pay for the furniture and, you know, anything that Hoyt had purchased for there."
* * * * * *
 "THE COURT: Well, that's what she is testifying to. That seems to me to be admissible.
 "MR. WEAVER: Well, it would be our position, Your Honor, that the use of the terminology so prejudices the minds of the Jury, that there is an implication in their minds from the start of the lawsuit that there was a settlement discussed at that time, and that settlement was not suitable and that the lawsuit is the result thereof. . . . Now, I submit to the Court you cannot erase the use of that terminology from the Jury's minds.
 "THE COURT: Well, I think it can be explained when she gets back on the stand as to exactly what was said. So, I will overrule your motion for a mistrial."
Upon resumption of direct examination, appellees' attorney questioned the witness minutely about the tenor of the conversation between herself and Felder. The jury was made aware of everything said in that conversation. Any possible prejudice from the previous use of the term "settlement" was corrected. We cannot say that the trial court erred in this regard. He took painstaking measures to determine the exact nature of the conversation, and after *Page 7 
making that determination suggested that the witness could explain what she meant by "settlement." Appellees' attorney did, in fact, give the witness an opportunity to explain the entire conversation.
 "Q Was there any discussion about payment for office furniture and furnishings and fixtures that belonged to your brother or the corporation?
 "A Yes, sir. I had told him that my still working with them would not interfere with the other Record Data of Alabama. And we discussed the furniture, that my brother had bought that furniture, you know, everything, furnishings and everything in the office was bought by him; did not belong to the Record Data International. And we discussed that.
 "Q What did Mr. Felder have to say about that, if anything?
 "A Well, he offered to buy it. I don't remember the figure.
"Q Did he quote you some figure?
"A He did, but I don't remember what it was.
 "Q O.K. Did you ever have any further communications with Mr. Felder personally, I mean you and he concerning the purchase of the equipment?
"A No, sir.
"Q The furnishings?
"A No, sir."
Appellants' next contention that the trial court erred in giving its oral charge on the fraud count to the jury is likewise without merit. Appellees correctly point out that no exception or objection was made so as to preserve the error. Rule 51, ARCP specifies that error may not be assigned for the giving of a defective charge unless the party seeking to assign error objects to that portion of the charge which is defective before the jury retires to consider its verdict, and specifically states the matter to which he objects and the grounds of his objection. At the close of the trial court's oral charges, the court asked the appellants "What says the Defendant?" Appellants' counsel replied, "No exceptions."
Rule 51 affords the trial court an opportunity to correct any error in its charge before it becomes error with injury to reversal. No objection or exception was preserved for the trial court to review his charges. Therefore, no error was committed.Odom v. Linsey, 365 So.2d 664 (Ala. 1978).
Appellants' next contention is that the trial court erred in submitting the issue of who were the parties to the franchise agreement to the jury instead of deciding that issue as a matter of law. However, the submission of the issue of who were the parties to the agreement was proper because it was a crucial factual question in the case. If the agreement was solely with Nichols individually, it terminated with his death. If it was with Nichols individually and with the corporation he formed, Legal Messenger Service, Inc., the corporate client had a cause of action against the defendants. As the trial court noted in its opinion and order overruling motion for new trial, viz.:
 "The defendants . . . complain that Legal Messenger Service of Alabama . . . was not in existence at the time the first franchise agreement was executed. However, evidence was presented indicating that the same was incorporated thereafter and that following such incorporation, an amendment to the franchise agreement was executed in the name of Legal Messenger Service . . .
 "Furthermore, the forms prepared by the defendants for use by the franchisee in the operation of the business in Alabama designated the franchisee as `Legal Messenger Service of Alabama, Inc.' The Court concludes that the question whether the defendant intended to enter into a contract with Legal Messenger Service . . . was one of fact, depending upon the intention of the parties."
We agree with the trial court that this was a jury issue.
Appellants' final contention is that the trial court erred in denying appellants judgment n.o.v. or in the alternative new trial *Page 8 
upon the ground that the verdict of the jury was excessive. The trial court held that "the evidence presented . . . was ample to justify an award of both compensatory and punitive damages." We must agree with the trial court in this regard as we cannot say, as a matter of law, that the award made by the jury was excessive in view of the evidence presented.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH,[1] FAULKNER, ALMON and EMBRY, JJ., concur.
 On Rehearing
Upon consideration of the application for rehearing by the full Court, the same is hereby overruled.
All the Justices concur.
[1] Justice Bloodworth, although not sitting at oral argument, has read and studied the briefs and listened to the tapes of oral argument.