987 So.2d 631 (2007)
Donald BROADNAX
v.
STATE of Alabama.
CR-04-2141.
Court of Criminal Appeals of Alabama.
June 29, 2007.
Rehearing Denied August 17, 2007.
Certiorari Denied December 21, 2007 Alabama Supreme Court 1061695.
*632 Daniel Gary Hamm, Montgomery, for appellant.
Troy King, atty. gen., and Richard D. Anderson, J. Clayton Crenshaw, and Jeremy W. McIntire, asst. attys. gen., for appellee.
SHAW, Judge.
Donald Broadnax appeals the circuit court's denial of his Rule 32, Ala.R.Crim. P., petition for postconviction relief, in which he attacked his capital-murder convictions and his sentence of death.
In 1997, Broadnax was convicted of four counts of capital murder in connection with the murders of his wife, Hector Jan Stamps Broadnax, and her four-year-old grandson, DeAngelo Stamps. The murders were made capital (1) because two or more persons were murdered pursuant to one scheme or course of conduct, see § 13A-5-40(a)(10), Ala.Code 1975; (2) because Broadnax had been convicted of another murder in the 20-year period preceding the present murders, see § 13A-5-40(a)(13), Ala.Code 1975; and (3) because the murders were committed during the course of a kidnapping, see § 13A-5-40(a)(1), Ala.Code 1975. The murder of DeAngelo Stamps was also made capital because he was under 14 years of age at the time of his death, see § 13A-5-40(a)(15), Ala.Code 1975. The jury unanimously recommended that Broadnax be sentenced to death, and the trial court accepted the jury's recommendation and sentenced Broadnax to death. Broadnax's convictions and sentence were affirmed on appeal, Broadnax v. State, 825 So.2d 134 (Ala.Crim.App.2000), aff'd, 825 So.2d 233 (Ala.2001), and the United States Supreme Court denied certiorari review, Broadnax v. Alabama, 536 U.S. 964, 122 S.Ct. 2675, 153 L.Ed.2d 847 (2002). This Court issued a certificate of judgment on January 16, 2002.
Broadnax, through counsel Timothy J. Golden, filed his Rule 32 petition on June 25, 2003, raising several claims, including numerous allegations of ineffective assistance of trial counsel. On September 24, 2003, the State filed a motion seeking to have the court order Broadnax to amend those allegations of ineffective assistance of counsel in his petition that the State believed were insufficiently pleaded under Rule 32.3 and Rule 32.6(b), Ala.R.Crim.P.; a motion to summarily dismiss those claims in Broadnax's petition that the State believed were subject to the procedural bars in Rule 32.2, Ala.R.Crim.P.; a motion to summarily dismiss those claims in his petition that the State believed presented no material issue of fact or law; and an answer to the remaining claims in Broadnax's petition. On September 26, 2003, the circuit court granted the State's three motions; it summarily dismissed several of the claims in Broadnax's petition, and it ordered Broadnax to amend several of his allegations of ineffective assistance of counsel within 30 days to comply with the pleading requirements in Rule 32.3 and Rule 32.6(b), specifically informing Broadnax that the failure to comply *633 with the pleading requirements would result in summary dismissal of those allegations.
After obtaining several extensions, Broadnax filed an amendment to his petition on January 16, 2004. On February 19, 2004, the circuit court set an evidentiary hearing on the petition and the amendment for April 2, 2004. On March 8, 2004, and March 10, 2004, respectively, the State filed a motion to summarily dismiss those allegations of ineffective assistance of counsel in Broadnax's petition and amendment that the State believed were insufficiently pleaded under Rule 32.3 and Rule 32.6(b); a motion to dismiss those claims in Broadnax's petition and amendment that the State believed presented no material issue of fact or law; a motion to dismiss those claims in Broadnax's petition and amendment that the State believed were subject to the procedural bars in Rule 32.2; and an amended answer to the remaining claims in Broadnax's petition and amendment. On March 23, 2004, the circuit court granted the State's three motions, summarily dismissing several of Broadnax's claims.
On April 2, 2004, at what was originally scheduled as an evidentiary hearing, the circuit court granted Broadnax's request for a continuance and reset the evidentiary hearing on the remaining claims in Broadnax's petition and amendment for August 25, 2004. On August 11, 2004, the circuit court granted Broadnax's request for a second continuance and reset the hearing for January 21, 2005. The case-action summary reflects that on January 6, 2005, the circuit court again reset the hearing for March 11, 2005. Although the reason for this third continuance does not specifically appear in the record, also on January 6, 2005, the circuit court appointed new counsel, Mari Morrison, to represent Broadnax on his Rule 32 petition, thus indicating the appointment of new counsel prompted the continuance. On February 4, 2005, Golden moved to withdraw, and the circuit court granted the motion on February 8, 2005. Morrison then moved for a continuance of the hearing, which the circuit court granted; the hearing was reset for April 28, 2005. On April 7, 2005, Broadnax filed another motion for a continuance, which the circuit court granted on April 8, 2005; the hearing was reset for May 23, 2005.
On April 8, 2005, Broadnax filed a motion for leave to file a second amendment to his petition; a motion for funds; and a motion for discovery. On April 15, 2005, the State filed oppositions to all Broadnax's motions, and the circuit court held a hearing on the motions the same day, after which it denied the motions. The circuit court held an evidentiary hearing on Broadnax's petition and the amendment on May 23, 2005. On June 14, 2005, the circuit court issued an order denying the petition and the amendment.[1]
Broadnax raises several issues on appeal. However, because of our disposition *634 of this case, we need address only one issue. Broadnax contends that the circuit court erred in denying his motion for leave to file a second amendment to his petition. We agree.
As noted, on September 26, 2003, the circuit court granted the State's motion requesting that Broadnax amend his petition to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b) and ordered Broadnax to file an amendment. After several extensions, Broadnax filed an amendment to his petition on January 16, 2004. On April 8, 2005, Broadnax filed a motion to again amend his petition. In the motion, counsel Morrison alleged that she had "had the opportunity to interview Mr. Broadnax in March 2005, on several occasions and has discovered relevant mitigating factors that have not been included within the Rule 32 petition and have such an extent [sic] of probative value that the prejudice resulted [sic] in a different sentence had the jury and trial court known." (C. 782.) Morrison did not identify in the motion what specific mitigating evidence she had discovered that had not been included in the petition and the first amendment, nor did she include with her motion an actual amendment to the petition setting forth the mitigating evidence she had discovered. However, at the hearing on the motion on April 15, 2005, Morrison argued that she had learned from her interviews with Broadnax that he had been sexually abused between the ages of 12 and 14 which, she said, resulted in a drop in his grades and a change in his behavior at that time. Although not specifically stated by counsel, these additional allegations would have been relevant to, and supportive of, Broadnax's claim that his trial counsel were ineffective for not adequately investigating and presenting mitigation evidence, one of the claims not previously disposed of by the circuit court. Counsel stated at the hearing that she had had more time to meet with Broadnax than had his previous counsel and that she perhaps had developed a better rapport with Broadnax and Broadnax, therefore, had disclosed this information to her. In addition, Morrison stated that Broadnax's trial counsel had not put on a single witness during the guilt phase of the trial but that she had learned through her investigation that, at the time of the crime, Broadnax had an injury to his hand that, she believed, might have made it impossible for him to have beaten the victims as severely as the testimony at trial indicated they had been beaten. As the State noted at the hearing, this allegation that trial counsel was ineffective for not discovering and presenting this evidence was a new claim that had not been raised in Broadnax's original petition or in his first amendment. In opposition to the motion to amend, the State argued that an amendment at that time  38 days before the date of the hearing on the petition, when the petition had been pending in the circuit court for almost two years as a result of Broadnax's numerous requests for continuances and when Broadnax had already had an opportunity to amend his petition once  would unduly prejudice the State and unduly delay the proceedings. The circuit court denied Broadnax's motion to amend his petition for a second time, stating: "We're going to get to the bottom of this. He's been represented by counsel all along. And, you know, it's time to draw this matter to a conclusion." (R.Supp. 20.)
In Ex parte Rhone, 900 So.2d 455 (Ala. 2004), the Alabama Supreme Court set forth the principles governing amendments to Rule 32 petitions:
"This Court's statements concerning the amendment of Rule 32 petitions are supported by the plain language of Rule 32.7, Ala.R.Crim.P. Subsection (b) of that rule unambiguously grants discretion *635 to the trial court, providing that `[a]mendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment.' (Emphasis added [in Ex parte Rhone].) Guiding the exercise of that discretion is the mandate of subsection (d) that `[l]eave to amend shall be freely granted.' (Emphasis added [in Ex parte Rhone].) However, because the trial court has discretion to refuse an amendment to a Rule 32 petition, we must consider the nature of the factors that would provide a proper basis for such a refusal.
"In Ex parte Allen, [825 So.2d 271 (Ala.2002),] this Court cited Talley v. State, 802 So.2d 1106, 1107 (Ala.Crim. App.2001), in support of our statement of the principles relevant to the amendment of Rule 32 petitions. In Talley, the Court of Criminal Appeals stated:
"`"`[A]mendments should be freely allowed and ... trial judges must be given discretion to allow or refuse amendments.... The trial judge should allow a proposed amendment if it is necessary for a full determination on the merits and if it does not unduly prejudice the opposing party or unduly delay the trial.' Record Data International, Inc. v. Nichols, 381 So.2d 1, 5 (Ala. 1979) (citations omitted). `The grant or denial of leave to amend is a matter within the sound discretion of the trial judge....' Walker v. Traughber, 351 So.2d 917 (Ala.Civ. App.1977)."
"`Cochran v. State, 548 So.2d 1062, 1075 (Ala.Crim.App.1989).'
"802 So.2d at 1107-08 (emphasis added [in Ex parte Rhone]). The statements in Talley are consistent with this Court's prior decisions, as well as with Rule 32.7. Thus, it is clear that only grounds such as actual prejudice or undue delay will support a trial court's refusal to allow, or to consider, an amendment to a Rule 32 petition."
900 So.2d at 457-58. The Court then concluded that "[t]he right to amend is limited by the trial court's discretion to refuse an amendment based upon factors such as undue delay or undue prejudice to the opposing party. That limitation is ... sufficient to protect the rights of the parties, while allowing the trial court sufficient control over the management of its docket." 900 So.2d at 459.
In Ex parte Jenkins, 972 So.2d 159 (Ala. 2005), the Alabama Supreme Court further explained its holding in Ex parte Rhone:
"This Court recently examined the principles applicable to the amendment of Rule 32 petitions in Ex parte Rhone, 900 So.2d 455 (Ala.2004). In Rhone, the petitioner moved to amend his Rule 32 petition 16 days after the trial court had received the original petition. In denying the petition, the trial court addressed only the claims in the original petition. The Court of Criminal Appeals affirmed the denial, holding that the trial court had not exceeded its discretion in failing to address the claims in the amendment to Rhone's petition because `Rhone failed to meet his initial burden of showing diligence in filing the amendment or that the facts underlying the amendment were unknown to him before filing his original petition.' Rhone v. State, 900 So.2d 443, 448 (Ala.Crim.App. 2004). This Court granted certiorari review to consider Rhone's contention that the Court of Criminal Appeals' decision conflicted with the well-established principle stated by this Court in Ex parte Allen, 825 So.2d 271, 273 (Ala.2002), that although `[l]eave to amend a Rule 32 petition is within the discretion of the *636 trial court, ... it should be freely granted.'
"In considering the nature of the factors that would provide a proper basis upon which a trial court could exercise the discretion to disallow an amendment to a Rule 32 petition, this Court stated in Ex parte Rhone that `it is clear that only grounds such as actual prejudice or undue delay will support a trial court's refusal to allow, or to consider, an amendment to a Rule 32 petition.' 900 So.2d at 458. We concluded in Rhone that the Court of Criminal Appeals erred in imposing upon a Rule 32 petitioner an `initial burden' to show diligence in filing the amendment or that the facts underlying that amendment were unknown when the original petition was filed. We stated: `Such a burden is clearly inconsistent with the mandate of this Court, as expressed in both its decisions and in Rule 32, that leave to amend should be freely granted.' 900 So.2d at 458-59.
"This Court also responded in Ex parte Rhone to the Court of Criminal Appeals' statement that the only alternative to its holding in Rhone v. State would be "`to allow a petitioner the unfettered right to amend his Rule 32 petition."' 900 So.2d at 459. We responded:
"`That statement, however, is not correct. The right to amend is limited by the trial court's discretion to refuse an amendment based upon factors such as undue delay or undue prejudice to the opposing party. That limitation is, in this Court's opinion, sufficient to protect the rights of the parties, while allowing the trial court sufficient control over the management of its docket.'
"900 So.2d at 459.
"....
"As we held in Ex parte Rhone, however, a petitioner does not have the unfettered right to file endless amendments to a Rule 32 petition. The right to amend is limited by the trial court's discretion to refuse to allow an amendment if the trial court finds that the petitioner has unduly delayed filing the amendment or that an amendment unduly prejudices the State. Such an exercise of the trial court's discretion would certainly be appropriate, for example, if, on the eve of an evidentiary hearing, a Rule 32 petitioner filed an amendment that included new claims of which the State had no prior notice and as to which it was not prepared to defend.
"We emphasize that the concepts of `undue delay' and `undue prejudice' as discussed in this opinion and in Ex parte Rhone apply to the trial court's management of its docket and to the petitioner's attention to his or her case. Those concepts cannot be applied to restrict the petitioner's right to file an amendment clearly provided for in Rule 32.7 simply because it states a new claim that was not included in the original petition."
972 So.2d at 163-64.
Subsequently, in Ex parte Woods, 957 So.2d 533 (Ala.2006), the Supreme Court applied its holding in Ex parte Rhone. In Ex parte Woods, the petitioner filed a Rule 32 petition in July 2002, and an amendment to the petition in November 2002. After a status conference in December 2002, the circuit court ordered both parties to submit proposed orders by the end of January 2003. However, instead of following the circuit court's request and submitting a proposed order, the petitioner submitted a second amended petition. The State objected, and the circuit court struck the second amended petition. Six months later, in July 2003, the circuit court summarily *637 dismissed Woods's petition. This Court held that the circuit court had not erred in striking the second amended petition, Woods v. State, 957 So.2d 492 (Ala. Crim.App.2004), but the Alabama Supreme Court reversed our judgment, holding that "[t]he facts of this case do not establish that the circuit court's consideration of Woods's second amended petition would give rise to actual prejudice or cause undue delay." Ex parte Woods, 957 So.2d at 536-37.
This Court has also addressed and applied the Supreme Court's holding in Ex parte Rhone in Wilson v. State, 911 So.2d 40 (Ala.Crim.App.2005), and in Smith v. State, 961 So.2d 916 (Ala.Crim.App.2006). In Wilson, the petitioner filed his Rule 32 petition in December 2001, and an amendment in March 2002. Four days after the amendment was filed, the State filed a motion to dismiss the petition, attaching an affidavit from trial counsel. In July 2002, the petitioner filed a second amendment, responding to the State's motion to dismiss and trial counsel's affidavit. Four days later, the circuit court held a hearing on the State's motion to dismiss and took the issue under advisement. In August 2002, the petitioner filed three more amendments; the fourth and fifth amendments included further responses to trial counsel's affidavit. In October 2002, the circuit court issued an order summarily denying the petition without an evidentiary hearing and refusing to accept any of the petitioner's amendments. This Court held that the circuit court erred in refusing to accept the first, second, fourth, and fifth amendments.[2] With respect to the first amendment, this Court noted that it had been filed before the State had even responded, as had been the case in Ex parte Rhone, and, thus, accepting the amendment would have caused no undue delay or undue prejudice. With respect to the remaining amendments, this Court held that the amendments were the only avenue for the petitioner to respond to trial counsel's affidavit, given that the circuit court had not held an evidentiary hearing, and that acceptance of the amendments, all filed within eight months of the original petition and two months before the circuit court's summary denial of the petition, would not have unduly delayed the proceedings.
In Smith, the petitioner filed his Rule 32 petition in June 2002, and the State responded. In September 2002, the petitioner filed his first amended petition, and attached an affidavit from Dr. Michael S. Maher in support of his allegation that his trial counsel were ineffective for not presenting evidence of his mental-health problems. The State again responded. The circuit court then set December 31, 2002, as the deadline for filing amendments. Over the next three years, the evidentiary hearing on the petition was continued several times, at both the State's and the petitioner's requests, and discovery was exchanged between the parties. On July 12, 2005, 13 days before the evidentiary hearing was scheduled to take place on July 25, 2005, the State filed an objection to some of the petitioner's witnesses, arguing that only one expert witness had been identified in the petition, Dr. Maher, and that during Dr. Maher's deposition, Dr. Maher had stated that the petitioner suffered from additional mental-health problems that Dr. Maher had not previously identified in his affidavit, which had been attached to the first amended petition. The State moved that no expert not specifically listed in the petition be allowed to testify at the evidentiary hearing and that Dr. Maher be allowed to testify only to *638 that diagnosis that had been referred to in the affidavit. On July 18, 2005, only seven days before the evidentiary hearing, the petitioner filed a response to the State's objection, as well as a motion to amend his petition, and a second amended petition setting forth additional factual allegations to support his claim that his trial counsel were ineffective for not presenting evidence of his mental-health problems and naming the additional expert witnesses who had been disclosed during the discovery process. The circuit court granted the State's motion to limit Dr. Maher's testimony to that information contained in his affidavit and to preclude the additional expert witnesses from testifying and denied the motion to amend.
On appeal, this Court held that the circuit court erred in denying the petitioner's motion to amend:
"Based on the Alabama Rules of Criminal Procedure and the Alabama Supreme Court caselaw quoted above, the circuit court erred when it set a deadline for amendments and stated that it would allow further amendments `only upon showing of good cause with evidentiary basis.' Instead, the circuit court could have properly denied an amendment only upon a finding of undue delay or undue prejudice. When it struck the Second Amended Petition, the circuit court did not cite either of these reasons.
"In his Second Amended Petition, the appellant did not raise new claims of which the State did not have prior notice and as to which it was not or could not have been prepared to defend. In fact, he amended only one paragraph  paragraph 105  in his Second Amended Petition. In that paragraph, he fleshed out with more specificity his previous claim regarding his alleged mental health problems and the experts who would testify about such problems. The State argues that it did not have the specific information about which the experts intended to testify until shortly before the evidentiary hearing. However, the record shows that the State knew about the appellant's experts and their conclusions almost one year before the appellant filed his Second Amended Petition. Also, it had the opportunity to depose the experts and learn more specific information about their opinions almost one year before the appellant filed his Second Amended Petition, and it specifically chose not to do so. In fact, the State waited until July 8, 2005, and then deposed only Maher. Further, even before the appellant attempted to file a Second Amended Petition, as evidenced by its `Memorandum Brief Concerning Issues to Be Considered by the Court at the Rule 32 Evidentiary Hearing,' the State was fully aware of his claims regarding his mental health condition....
"`....'
"... Finally, the State retained its own mental health expert to evaluate the appellant and to rebut the appellant's evidence regarding his mental health. Therefore, consideration of the Second Amended Petition, which simply expanded on a claim that had been included in both the original petition and the First Amended Petition, would not have caused undue prejudice to the State.
"Also, consideration of the Second Amended Petition would not have adversely affected the circuit court's control over the management of its docket. The record does not indicate that the appellant neglected his case. Rather, it establishes that, despite several continuances, the parties continued to conduct and exchange discovery. The State argues that it would not have had time to respond to the Second Amended Petition *639 before the evidentiary hearing and that another continuance might have been required. However, the only substantive changes were in paragraph 105 of his Second Amended Petition. As is set forth above, the State was already aware of the additional information that was included in the Second Amended Petition. Therefore, it could have easily filed a response to the Second Amended Petition, and there would not have been any reason for any further delay of the evidentiary hearing. Accordingly, consideration of the Second Amended Petition would not have caused undue delay."
Smith, 961 So.2d at 927-28.
Based on the cases cited above and the particular circumstances of this case, we have no choice but to conclude that the circuit court erred in denying Broadnax's motion for leave to file a second amended petition. Like the circuit court in Smith, the circuit court in this case did not cite undue prejudice or undue delay as reasons for denying Broadnax's motion for leave to amend. Nevertheless, the State argued to the circuit court, and continues to argue on appeal, that granting the motion to amend would have caused undue prejudice to the State and would have unduly delayed the proceedings.[3] For the reasons stated below, we cannot agree with the State's arguments.
The State argues that allowing an amendment after a partial judgment had been entered summarily dismissing several of Broadnax's claims would have had the effect of vacating the circuit court's dismissal of those claims and beginning the proceedings "anew," resulting in "another round of time-consuming litigation." (State's brief at p. 78.) Thus, the State concludes, it "would have been forced to answer and defend claims that had previously been dismissed," which, it says, would have resulted in prejudice. (State's brief at p. 78.) In addition, the State argues, the Rule 32 proceedings had been continued several times at Broadnax's request and because, it argues, allowing an amendment would have effectively restarted the Rule 32 proceedings, the proceedings would have been unduly delayed even further and would have denied the State its "right to a timely disposition of Rule 32 proceedings." (State's brief at p. 79.)
Rule 32.7(b) provides that "[a]mendments to pleadings may be permitted at any stage of the proceedings prior to entry of judgment." (Emphasis added.) When a partial judgment is entered on a Rule 32 petition, as is often the case in a Rule 32 petition challenging a death sentence, those claims that had previously been disposed of by the circuit court cannot be amended; such an amendment would clearly be after entry of judgment and in violation of Rule 32.7(b). See, e.g., Hodges v. State, [Ms. CR-04-1226, March 23, 2007] ___ So.2d ___ (Ala.Crim.App.2007). Thus, contrary to the State's contention, allowing an amendment after the entry of a partial judgment on a Rule 32 petition does not have the effect of vacating the previously entered judgment. In this case, Broadnax could not have amended any of the claims that had previously been dismissed by the circuit court, and allowing him to amend those claims that had not been dismissed or to add new claims would not have vacated the circuit court's previous orders dismissing several of his claims, nor would it have begun the proceedings *640 "anew" as argued by the State. Thus, the State would not have been forced to respond to those claims that had previously been dismissed but would have been required to respond only to the new and/or expanded claims. Although having to respond to an amendment, in any circumstance, would certainly cause some marginal prejudice to the State, we cannot say that merely having to respond to an amendment, alone, constitutes undue prejudice to the State. If that were the case, then no amendment would be permitted, and Ex parte Rhone, Ex parte Woods, Wilson, and Smith all would have been decided differently.
In addition, although counsel Morrison indicated at the hearing on the motion to amend that she intended to raise a new claim in the amendment, a new claim does not automatically result in undue prejudice to the State. In Ex parte Jenkins, the Supreme Court specifically noted that a circuit court would be well within its discretion to refuse to accept an amendment asserting a new claim if that amendment was filed "on the eve of an evidentiary hearing," but the Court nevertheless pointed out that the concepts of undue prejudice and undue delay "cannot be applied to restrict the petitioner's right to file an amendment clearly provided for in Rule 32.7 simply because it states a new claim that was not included in the original petition." 972 So.2d at 164. Here, the motion to amend was filed 45 days before the scheduled evidentiary hearing; 45 days is not on the "eve" of the evidentiary hearing. Thus, we cannot say that requiring the State to respond to the new claim would have caused the State undue prejudice.
Likewise, we cannot say that allowing Broadnax to amend his petition would have unduly delayed the proceedings. As noted, Broadnax's motion for leave to amend was filed 45 days before the scheduled evidentiary hearing. Rule 32.7(a) provides that, unless otherwise authorized by the court, the State has 30 days to respond to a petition. Although Broadnax did not file an actual amendment with his motion and the hearing on the motion was not held until 38 days before the evidentiary hearing, we have no reason to believe that Broadnax could not have filed the amendment within time to allow the State 30 days before the evidentiary hearing to respond to the amendment. In other words, nothing in the record indicates that allowing the amendment would have further delayed the evidentiary hearing.
Moreover, although Broadnax's petition had, at the time he filed his motion to amend, been pending in the circuit court for almost two years, mostly as a result of continuances requested by Broadnax himself, Broadnax's original Rule 32 counsel, Golden, had withdrawn from the case and new counsel, Morrison, had been appointed only three months earlier, in January 2005. At the hearing on the motion to amend, Morrison indicated that the amendment was based on her investigation and interviews with Broadnax since her appointment and would include one new claim and an expansion of a claim that had been raised in the original petition. We do not agree with the State that "[i]t is irrelevant that Broadnax's original Rule 32 counsel withdrew from the case and new counsel was appointed." (State's brief at p. 79.) We agree that Broadnax was represented by able counsel throughout the Rule 32 proceedings. However, Morrison was not appointed to represent Broadnax until January 2005, only four months before the evidentiary hearing, and nothing in the record indicates that the substitution of counsel was an intentional delay tactic. Broadnax did not fire his counsel; counsel moved to withdraw, and this was the only *641 substitution of counsel throughout the proceedings. In his motion to withdraw, Golden stated that he was experiencing severe financial hardship and that he would be unable to continue representing Broadnax, a situation not unusual in the representation of indigent death-row inmates. We note that it was also Golden's financial hardship that prompted his request for a second continuance, which was unopposed by the State, and which led to the evidentiary hearing being continued from August 25, 2004, to January 21, 2005. It appears from the record that Golden discussed the situation with both the State and the circuit court before withdrawing and that he was involved in finding Morrison upon his withdrawal. Thus, we cannot say that the substitution of counsel was in any way a delay tactic.
Furthermore, we cannot say that Morrison's two requests for continuances after her appointment or her three-month delay in filing the motion for leave to amend were in any way unreasonable. Morrison clearly needed time to familiarize herself with the case and to investigate after her appointment in January 2005, and three months is not an unreasonable amount of time to prepare in a capital case. Indeed, it took the State three months to respond to Broadnax's petition. Although there was an almost-two-year delay between the filing of Broadnax's original petition and counsel Morrison's motion to file a second amended petition, under the circumstances in this case, we cannot say this was the result of negligence or intentional delay.
It is important to note that this is not a case where the petitioner had already filed multiple amendments and was attempting to file yet another amendment. Although Broadnax had filed one previous amendment, the petitioners in Ex parte Woods and Smith had likewise filed previous amendments. In addition, as noted above, this is not a case where the amendment was filed on the eve of the evidentiary hearing  it was filed 45 days before the hearing  nor is this a case where the amendment contained a multitude of new claims of which the State was never given notice  counsel here indicated that only one new claim would be raised in the amendment. Finally, as noted above, this is not a case where the petitioner fired his counsel shortly before the evidentiary hearing and the substitution of counsel was an obvious and intentional delay tactic. Rather, the substitution of counsel was at the request of counsel himself as the result of financial hardship.
Based on the circumstances in this case and the caselaw cited herein, we hold that the circuit court erred in denying Broadnax's motion for leave to amend his petition, and we must reverse the circuit court's judgment on that ground. In doing so, we also note that the circuit court erred in denying some of Broadnax's allegations of ineffective assistance of counsel on the ground that this Court's finding of no plain error on direct appeal regarding the underlying substantive issue precluded a finding of prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Ex parte Taylor, [Ms. 1040186, September 30, 2005] ___ So.2d ___, ___ (Ala.2005), the Alabama Supreme Court held that "[a]lthough it may be the rare case in which the application of the plain-error test and the prejudice prong of the Strickland test will result in different outcomes, a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under Strickland to sustain a claim of ineffective assistance of counsel." We recognize that the circuit court's order in this case was issued before the Supreme Court's opinion in Ex parte Taylor was released; thus, we cannot fault *642 the circuit court for applying a standard this Court had followed for many years. See, e.g., Hunt v. State, 940 So.2d 1041 (Ala.Crim.App.2005), and the cases cited therein. However, on remand, we instruct the circuit court to reconsider those allegations of ineffective assistance of counsel in light of the Supreme Court's opinion in Ex parte Taylor.
Based on the foregoing, the judgment of the circuit court is reversed and this cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
BASCHAB, P.J., and McMILLAN and WELCH, JJ., concur.
WISE, J., concurs specially.
WISE, Judge (concurring specially).
I reluctantly concur with the main opinion's reversal of the circuit court's denial of Broadnax's Rule 32, Ala.R.Crim.P., petition, challenging his convictions for capital murder and his sentence of death, based on the holding of the Alabama Supreme Court in Ex parte Rhone, 900 So.2d 455 (Ala.2004), and subsequent decisions applying that holding. However, I write to urge the Supreme Court to revisit its holding in Ex parte Rhone, and, further, to amend Rule 32.7 so as to give some finality to a Rule 32 petitioner's pleadings.
This Court is bound by decisions of the Alabama Supreme Court, see § 12-3-16, Ala.Code 1975, and "is without authority to overrule the decisions of [that] court." Jones v. City of Huntsville, 288 Ala. 242, 244, 259 So.2d 288, 290 (1972). Thus, we have no choice; we must reverse the circuit court's order denying Broadnax's Rule 32 petition and remand this case for that court to allow Broadnax to amend his Rule 32 petition yet again to add new allegations of ineffective assistance of counsel and for the court to enter a new order addressing those allegations.
In my opinion, the Supreme Court's holding in Ex parte Rhone has expanded the scope of Rule 32.7(b) far beyond the plain language of that rule. Rule 32.7(b) provides: "Amendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment." (Emphasis supplied.) Thus, the plain language of Rule 32.7(b) creates no absolute right to amend a petition, only a conditional right, left to the sound discretion of the circuit court.
I believe that allowing a petitioner the unfettered right to amend his Rule 32 petition  without first requiring any showing of diligence or a showing that the underlying facts were unknown to the petitioner before the Rule 32 petition was filed  opens a Pandora's box. Such a decision will, in my opinion, lead to a flood of frivolous amendments to Rule 32 petitions, the consequence of which will be unnecessary delays in the resolution of meritorious claims, as well as the creation of yet more problems for an already overburdened and understaffed judicial system. There must be a point at which the claims presented to a court are sufficiently settled so as to allow a court to render a decision with some degree of finality.[4] Although I acknowledge newly appointed counsel's right to investigate the previously filed claims and the right to amend in the event counsel finds an additional ground for relief, counsel failed even to advise the court of *643 the proposed additional grounds at the time she filed the motion to amend. Nor did she file a copy of the amended Rule 32 petition with her motion. Although counsel did specify her claims during the hearing on her motion to amend, the hearing did not occur until 38 days before the scheduled evidentiary hearing, barely enough time to allow the State the requisite 30 days to file its response to the amendment, much less to fully prepare to address these new claims at an evidentiary hearing. The end result of allowing an eleventh-hour amendment would be yet another continuance and further delay in litigating the petitioner's claims.
Nevertheless, based on Ex parte Rhone, the circuit court erred in denying of Broadnax's request to amend his Rule 32 petition, thus mandating reversal of the circuit court's judgment. Because I believe that Ex parte Rhone unnecessarily expands the scope of Rule 32.7(b), I would urge the Supreme Court to revisit that decision at its earliest convenience. I further urge the Supreme Court to consider amending Rule 32.7(b) to establish specific guidelines and time periods governing amendments to Rule 32 petitions.
NOTES
[1] We note that on July 15, 2005, 31 days after the circuit court denied his petition, Broadnax filed a motion to reconsider the circuit court's denial. On July 26, 2005, the circuit court initially set the motion for a hearing on August 8, 2005. That same day, Broadnax filed his notice of appeal. On August 1, 2005, the State filed an objection to the circuit court's setting the motion to reconsider for a hearing. On August 5, 2005, the circuit court denied Broadnax's motion to reconsider without a hearing, and it denied the State's objection to the circuit court's setting the motion for a hearing, apparently on the ground that it was moot. In Rule 32 proceedings, a circuit court retains jurisdiction for only 30 days after its judgment is entered. See Loggins v. State, 910 So.2d 146 (Ala.Crim.App.2005). Therefore, Broadnax's motion to reconsider was untimely and all subsequent orders by the circuit court directed to the motion are void for lack of jurisdiction.
[2] This Court held that any error in refusing to accept the third amendment was harmless because the petitioner was due no relief on the claim raised in that amendment.
[3] The State's brief in this case was filed before the decisions in Ex parte Woods and Smith were issued, and we cannot know what the State's position would be in this case in light of those opinions. However, we note that the State conceded error in Ex parte Woods, a case we believe presented a much closer question than is presented here.
[4] For this reason, Rule 32.7(b) should be amended to set out the circumstances under which a Rule 32 petition may be amended, as well as to establish a specific time period beyond which an amendment to a Rule 32 petition will not be entertained. Such an amendment to Rule 32 would clarify the Supreme Court's intent and be instructive to all parties involved in Rule 32 proceedings.